

Michael St. James, San Francisco, CA, for appellants.

Robert R. Barnes, San Diego, CA, for appellee.

Before MEYERS, ASHLAND and VOLINN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

The bankruptcy court confirmed the plan of appellee, West Coast Land Fund, L.P. ("West Coast"), a secured creditor. Pursuant to the plan West Coast obtained the property of the debtor, Vista Del Mar Associates, Inc. ("Debtor"), by credit bidding at an auction held immediately following the hearing on confirmation. The Debtor appeals the orders confirming the plan and approving the sale. West Coast has moved to dismiss the appeals as moot because the property was sold and the Debtor failed to obtain a stay. The Panel grants West Coast's motions and these appeals are **DISMISSED** as moot.

### II

#### FACTS

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code") on March 4, 1994.

**In re VISTA DEL MAR ASSOCIATES, INC., Debtor.**

**VISTA DEL MAR ASSOCIATES, INC., Courtney Rudnick and California Housing Ventures, Appellants,**

v.

**WEST COAST LAND FUND, Appellee.**

BAP Nos. NC–94–2246–MeAsV, NC–94–2247–MeAsV.

Bankruptcy No. 94–41536 N.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 1995.

Decided April 27, 1995.

The Debtor's sole asset, aside from personal property related thereto, was a partially completed 73–unit housing development ("Property"). The Property was valued by the Debtor at approximately $2.7 million. The Property was valued by West Coast at approximately $3.5 million. The Property was subject to the following encumbrances:

• Real property taxes: $500,000

• First Trust Deed (West Coast): $8,500,000

In addition, according to the Debtor, there was $2.8 million in "factually unsecured" debt owing to California Housing Ventures ("CHV"), an entity related to the Debtor, and to trade creditors.[1]

The Debtor commenced this case with a "pre-packaged" plan of reorganization which was distributed with a disclosure statement prior to the filing of the petition. The first plan contemplated a cash infusion from new investors and completion of development of the Property. At the hearing on the Debtor's first disclosure statement and plan the Debtor agreed to revise its disclosure statement. At a continued hearing the court did not approve the Debtor's amended disclosure statement.

At a subsequent hearing the court suggested that West Coast and the Debtor file competing plans. The Debtor filed a plan much the same as its first plan. West Coast filed a plan which provided for an auction of the Property to be held immediately following the confirmation hearing. West Coast proposed to open bidding with a credit bid in the amount of $3.5 million. Overbids were to proceed in $50,000 increments. The Property was to be sold subject to the $500,000 tax lien. Thus, the total value of West Coast's opening bid was to be $4,000,000.

At the hearing on the disclosure statements the court did not approve the disclosure statement of the Debtor. The court did approve the disclosure statement of West Coast, but made some additional requirements for the proposed sale. First, the court required West Coast to place "reasonable advertisement" in *The Wall Street Journal,* *The Recorder* and the *Daily Journal* which were to run three times a week for the three weeks preceding the sale. Second, potential buyers were not required to bring cashiers checks for the full amount of their ultimate bids. Buyers were only required to bring a cashiers check for the amount of $3,550,000, with the remainder payable in three days. A hearing on confirmation was scheduled for September 21, 1994.

At the September 21 hearing the court confirmed the plan of West Coast. Immediately upon confirmation, in the courtroom, West Coast conducted the auction and successfully purchased the Property by credit bid of $3.5 million. The court approved the sale. The orders confirming the plan and approving the sale were entered on September 27, 1994.

On October 3, 1994, the Debtor filed notices of appeal of the "Order Confirming Combined Disclosure Statement and Liquidating Plan Dated as of July 14, 1994" and the "Order Confirming and Approving Sale Constituting Grant Deed Conveying All Property of the Estate."

West Coast filed motions to dismiss the appeals as moot on the grounds that the sale had been completed and the Debtor had failed to obtain a stay pending appeal.

## III

### DISCUSSION

Bankruptcy's mootness rules developed from two alternative rationales, "the general rule that the occurrence of events which prevent an appellate court from granting effective relief renders an appeal moot, and the particular need for finality in orders regarding stays in bankruptcy." *Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421, 1424 (9th Cir.1985). In the Ninth Circuit two lines of cases have developed on mootness from these alternative rationales. One line of cases focusses on the court's ability to fashion mean-

---

1. According to the Debtor, CHV, has a claim of approximately $1.3 million "nominally secured by a second deed of trust ... but acknowledged to be factually unsecured." The Debtor also mentioned obligations to trade creditors "some of which were the subject of mechanics lien claims, some of which were timely perfected but all of which were factually unsecured...."

ingful relief ("general rule"). *In re Spirtos*, 992 F.2d 1004 (9th Cir.1993) and *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1351–52 (9th Cir.1994).

The other, which applies in this case, is applied when an order authorizes the sale of property of the estate and emphasizes the particular need for finality of such orders. *In re Onouli–Kona Land Co.*, 846 F.2d 1170, 1172–73 (9th Cir.1988); *In re Ewell*, 958 F.2d 276, 280 (9th Cir.1992); and *In re Southwest Products, Inc.*, 144 B.R. 100, 105 (9th Cir. BAP 1992). These cases hold that when an appellant fails to obtain a stay from an order that permits a sale of the debtor's asset, the appeal will be rendered moot regardless of whether the purchaser has taken irreversible steps following the sale. *Onouli–Kona Land Co., supra*, 846 F.2d at 1172. This mootness rule applies even where the buyer is a party to the appeal. *Id.* at 1172–73.[2]

The rule that failure to obtain a stay pending appeal renders the appeal moot originated as a judicial doctrine. *Algeran, supra*. 759 F.2d at 1424. In 1976 the mootness rule was added to former Rule 805 of the Rules of Bankruptcy Procedure:

> Unless an order approving a sale of property ... is stayed pending appeal, the sale to a good faith purchaser ... shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser ... knows of the pendency of the appeal.

The Advisory Committee Note to the 1976 amendments explained that this added sentence was "declaratory of existing case law." When the Code was enacted this mootness rule was incorporated into Section 363(m). *Algeran, supra*, 759 F.2d at 1424. Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Fed.R.Bankr.P. 8005, which went into effect in 1983 and superseded Rule 805, did not contain similar language regarding mootness.

Section 363(m) applies to sales by trustees made pursuant to Sections 363(b) and 363(c).[3] On the other hand, the language of Rule 805 was more general. However, this does not change our analysis. In *Algeran* the Court of Appeals for the Ninth Circuit determined that although the language of Section 363(m) appears to only apply to conveyances by trustees it did not abrogate the judicial mootness rule:

> We agree with the Eleventh Circuit, however, that the omission from Section 363(m) of the [general] language of the 1976 amendment of former Rule 805 does not indicate an intent that a conveyance by someone other than a trustee is now outside the general rule of mootness when a stay pending appeal has not been obtained.

*Id.* 759 F.2d at 1424. The Ninth Circuit in *Onouli–Kona*, citing *Algeran*, stated "[w]hether an order directly approves the sale or simply lifts the automatic stay, the mootness rule dictates that the appellant's failure to obtain a stay moots the appeal." *Onouli–Kona*, 846 F.2d at 1171. The mootness rule with respect to the sale of property in a bankruptcy case is thus broader than the specific language of Section 363(m).

---

2. In *Onouli–Kona* the bankruptcy court ordered that certain property of the debtor's estate be sold by public auction. At the sale the secured creditor successfully purchased the property by credit bid. Approximately six months later the court entered an order confirming the sale. The debtor appealed the order but failed to obtain a stay. The Ninth Circuit affirmed the district court's dismissal of the appeal as moot.

3. Section 363(b)(1) of the Code provides:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1).

Section 363(c)(1) provides:

> [T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or a hearing....

11 U.S.C. § 363(c)(1).

In the present case Section 363(m) applies by its terms to render this appeal moot. The sale was made pursuant to a properly noticed and confirmed plan of reorganization, the equivalent of a sale pursuant to court order made after notice and a hearing. The Property was sold pursuant to the terms of the plan in open court with the bankruptcy judge presiding. Section 363(m) dictates that, barring the exceptions discussed below, this appeal be dismissed as moot.

Nevertheless, the result would be the same if this Panel determined that Section 363(m) did not apply. As the Ninth Circuit determined in *Algeran,* the mootness rule is not limited to the language of Section 363(m) but applies more broadly to any court authorized sale of property in a bankruptcy case. The question of whether Section 363(m) actually applies is inconsequential. Either way, the mootness rule which was applied in *Onouli–Kona* applies in this case.[4]

There are two recognized exceptions to this mootness rule: (1) where the debtor has a statutory right of redemption, and (2) where other state law would permit the sale to be set aside. *In re Ewell,* 958 F.2d 276, 280 (9th Cir.1992). The exceptions do not apply to this case as the Debtor would have no redemption rights under California law and the Debtor has cited no other California law which would permit the sale to be set aside.

California redemption rights are set forth in Sections 729.010 *et seq.,* of the California Code of Civil Procedure. These sections only apply if property is sold by judicial foreclosure pursuant to a decree of foreclosure which provides that a deficiency judgment may be ordered against the debtor. Cal.Civ.Proc.Code §§ 725a *et seq.* (West 1995). If the property is sold in this manner a debtor may redeem such property up to one year after the date of sale. (Cal.Civ. Proc.Code § 729.030(b)). The sale pursuant to the plan was, however, more comparable to a nonjudicial foreclosure.[5]

In California there are no post-sale "redemption" rights if property is sold by nonjudicial foreclosure. Section 2924c of the California Civil Code provides that a debtor, or other interested party, such as a junior lienholder, may "reinstate" a defaulted obligation and thus avoid foreclosure by making payment of all amounts in default at any time from the date the notice of default is filed to five days *prior to* the date scheduled for the sale. Cal.Civil Code § 2924c. California law would not allow the Debtor to redeem the Property. Accordingly the exception does not apply.

The Debtor argues that West Coast is not entitled to the protection of the mootness rule because the Property was not purchased in good faith. The Debtor argues that the auction was "rigged" in that West Coast proposed to open bidding at a price higher than the appraised value of the Property. The Debtor provided no basis for its argument that an undersecured creditor may not bid more than the appraised value of the property. The law is actually to the contrary—a secured creditor may not be precluded from credit bidding its entire claim. *In re California Hancock, Inc.,* 88 B.R. 226, 231 (9th Cir. BAP 1988). West Coast made clear in its disclosure statement its intent to pay, in essence, $4,000,000 for the Property. If the opening bid had been set lower and a third party had bid on the Property, West Coast could simply have raised its bid to

---

4. The Panel notes that the deference afforded an order authorizing the sale of property is not unique to the mootness rule. The importance of finality in bankruptcy sales is also reflected in Fed.R.Bankr.P. 7062. Fed.R.Civ.P. 62(a), made applicable by Rule 7062, provides that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." Rule 7062 excepts certain orders, including orders authorizing the sale of property under Code Section 363, from the automatic 10–day stay of Rule 62.

5. Pursuant to West Coast's plan the auction was actually more favorable to the Debtor than would be a nonjudicial foreclosure. First, the court required West Coast to place a "reasonable advertisement" in *The Wall Street Journal, The Recorder* and the *Daily Journal.* Second, potential buyers were not required to bring cashiers checks for the full amount of their ultimate bids. Buyers were only required to bring a cashiers check for the amount of the minimum overbid, $3,550,000, with the remainder payable in three days.

$4,000,000 at that time. Starting the bid at a lower level would have made no difference in the outcome. The court considered the opening bid as well as the $50,000 bidding increments and concluded that they were acceptable. Contrary to the claim of the Debtor the bankruptcy court did not, at the hearings on the disclosure statements nor on confirmation, direct that West Coast's credit bid not exceed the value of the Property. Nothing in the record indicates that the purchase was not made in good faith.

## IV

### CONCLUSION

The Panel determines that these appeals are moot. The motions of West Coast are granted and these appeals are **DISMISSED**.