NOT FOR PUBLICATION

FILED

MAY 29 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   AZ-12-1368-MkDJu |
| ) | |
| PETER F. BRONSON AND SHERRI L. ) | Bk. No.   08-00777 |
| BRONSON, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| PETER F. BRONSON; SHERRI L. ) | |
| BRONSON, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| THOMAS M. THOMPSON, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted Without Oral Argument
on May 16, 2013

Filed – May 29, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

———————

Appearances:   Appellants Peter Bronson and Sherri Bronson on
brief pro se; Jimmie D. Smith on brief for
appellee Thomas M. Thompson.

———————

Before:  MARKELL, DUNN and JURY, Bankruptcy Judges.

———————

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

In August 2008, the bankruptcy court entered an order for relief from the automatic stay ("Relief From Stay Order") permitting appellee Thomas Thompson ("TMT") to foreclose on an office building ("Office Building") located in Miami, Arizona owned by debtors and appellants Peter and Sherri Bronson ("Bronsons"). By its terms, the Relief From Stay Order provided that foreclosure could proceed on and after November 19, 2008, if the Bronsons had not confirmed a chapter 11[1] plan by that date. No plan was confirmed, and TMT succeeded in foreclosing on the property in July 2009. Almost three years later, in May 2012, the Bronsons filed a motion pursuant to Civil Rule 60(b) seeking reconsideration of the Relief From Stay Order ("Reconsideration Motion"). The bankruptcy court denied the Reconsideration Motion, and the Bronsons appealed. We DISMISS this appeal as moot.

**FACTS**

This is the third of three appeals that the Bronsons have pursued before the Panel. The first, filed on February 1, 2012 ("BAP No. AZ-12-1058"), arose from an adversary proceeding that was not fully disposed of by the order appealed and that was still pending in the bankruptcy court during the course of the appeal. We dismissed BAP No. AZ-12-1058 as interlocutory by order entered on August 29, 2012.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

The second appeal, filed on June 15, 2012 ("BAP No. AZ-12-1320"), sought review of two orders: (1) an order converting the Bronsons' chapter 11 case to chapter 7, and (2) an order denying reconsideration of the conversion order. We are disposing of BAP No. AZ-12-1320 by a separate written decision issued contemporaneously with this decision. The decision disposing of BAP No. AZ-12-1320 contains a lengthy recitation of facts concerning the Bronsons' disputes with TMT. Accordingly, we only recite here those facts that are directly relevant to our disposition of this third appeal.

TMT was a secured creditor of the Bronsons. The Bronsons defaulted on the loan they owed to TMT, so TMT commenced foreclosure proceedings against the Office Building, which secured the loan. In furtherance thereof, TMT recorded in October 2007 a notice of trustee's sale.

On January 28, 2008, the day before the scheduled trustee's sale, the Bronsons filed their chapter 11 bankruptcy petition.[2] As a result of the automatic stay, the trustee's sale could not be held as scheduled. On July 2, 2008, TMT filed a motion for relief from stay, seeking to proceed with foreclosure against the Office Building. TMT noticed the "final hearing" on the relief from stay motion for August 19, 2008. The Bronsons, who were represented by counsel at the time, filed an opposition to the relief from stay motion, but never requested an evidentiary

---

[2]In April 2012, the court converted the Bronsons' chapter 11 case to chapter 7. The conversion order, and the denial of reconsideration of the conversion order, are the subject of BAP No. AZ-12-1320.

3

hearing in accordance with the bankruptcy court's local rules.[3] At the final hearing, the bankruptcy court orally announced its finding that cause existed for modifying the stay. According to the court, it was not persuaded that TMT's interest in the Office Building was adequately protected. With respect to the value of

---

[3]Those local rules provide in relevant part:

**(a)   Initial Hearing without Live Testimony.**  Pursuant to Bankruptcy Rule 9014(e), all hearings scheduled on contested matters will be conducted without live testimony except as otherwise ordered by the court. If, at such hearing, the court determines that there is a material factual dispute, the court will schedule a continued hearing at which live testimony will be admitted.

**(b) Request for Live Testimony.**

(1) Any party filing a motion, application, or objection who reasonably anticipates that its resolution will require live testimony may file an accompanying motion for an evidentiary hearing, stating:

    (A) The estimated time required for receipt of all evidence, including live testimony;

    (B) When the parties will be ready to present such evidence;

    (C) The estimated time required to complete all formal and informal discovery;

    (D) Whether a Bankruptcy Rule 7016 Scheduling Conference should be held; and,

    (E) Whether any party who may participate at the evidentiary hearing is appearing pro se.

(2) The party requesting an evidentiary hearing shall accompany the motion with a form of order.

Bankr. D. Ariz. R. 9014-2.

4

the Office Building, the court acknowledged that the Bronsons had listed the value of the Office Building in their schedules as exceeding $1 million, but the court expressed doubt regarding the scheduled value and opined that the scheduled value by itself was not sufficient under the circumstances to satisfy the adequate protection requirement. The court expressed particular concern over rents from the property and the fact that nothing was being paid either to secured creditors or for property taxes:

> I'm concerned about a piece of property sitting there with no money to secured creditors, no money to pay for taxes, and yet it throws off income [of $1,000 per month].

Hr'g Tr. (Aug. 19, 2008) at 24:15-17.

Nonetheless, the court further ruled that it did not want to immediately terminate the stay. Instead, it wanted to give the Bronsons a further opportunity to confirm a chapter 11 plan and/or to sell or refinance the Office Building. Thus, the court ruled that the stay would remain in effect, unless by November 19, 2008, the Bronsons had not confirmed a chapter 11 plan, at which point the stay would be modified to permit TMT to foreclose on the Office Building.

On August 22, 2008, the bankruptcy court entered the Relief From Stay Order, which was consistent with the court's oral ruling. The Bronsons never appealed the Relief From Stay Order. Nor did they ever confirm a chapter 11 plan. TMT ultimately proceeded with the foreclosure sale on July 13, 2009, at which TMT was the successful bidder based on a credit bid of $200,000.

A trustee's deed was recorded on July 17, 2009.[4]

The Bronsons did not file their Reconsideration Motion of the Relief From Stay Order until May 24, 2012. By the time of the filing of their Reconsideration Motion, the Bronsons were representing themselves in their bankruptcy case. The Reconsideration Motion sought relief based on Civil Rule 60(b)(2), (3) and (6). While the Bronsons' allegations were wide ranging, the Reconsideration Motion hinged on the Bronsons' contention that TMT wrongfully failed to disclose certain facts concerning TMT's foreclosure and subsequent resale of a parcel of commercial real property located on Broad Street in Globe, Arizona ("Broad Property"). According to the Bronsons, TMT purchased the Broad Property in June 2008 at a foreclosure sale for a credit bid of $384,000 and resold the Broad Property to a third party in 2009 for $420,000 ("Broad Sale"). The Bronsons contend that the the Broad Sale established the value of the Broad Property, which in turn established the value of the Office Building, by "extrapolation." Therefore, the Bronsons concluded, TMT and his counsel should have disclosed the Broad Property and its sale during the course of the relief from stay proceedings.[5]

---

[4]While the Bronsons have represented themselves in this appeal, they were represented by counsel during the entire period of the events described above, from the time they filed bankruptcy through the time TMT foreclosed on the Office Building.

[5]The Bronsons twice claim in their opening brief that they first learned about the Broad Property on or after May 24, 2011. Aplt. Opn. Br. at pp. 3, 22. This claim is patently false. The Bronsons asserted in November 2009, in their motion to dismiss TMT's adversary complaint seeking a deficiency, that the Broad
(continued...)

On July 10, 2012, the bankruptcy court entered an order denying the Reconsideration Motion, in essence holding that the Bronsons were not entitled to relief because their motion was untimely and because they had not established adequate grounds for relief under Civil Rule 60(b)(2), (3) or (6).  The Bronsons timely filed a notice of appeal from the Order denying their Reconsideration Motion on July 16, 2012.[6]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G).  Subject to the mootness discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Is this appeal moot?

## STANDARD OF REVIEW

We have an independent duty to determine whether an appeal is moot within the meaning of Article III's case or controversy requirement, and the mootness issue is considered de novo.  See U.S. v. Golden Valley Elec. Ass'n, 689 F.3d 1108, 1112 (9th Cir.

---

[5](...continued)
Sale for $420,000 established that TMT was not entitled to any deficiency.

[6]Prior to entering the July 10, 2012 order, the bankruptcy court entered on June 27, 2012 what it referred to as an "interim order" denying the Reconsideration Motion ("Interim Order").  If the Interim Order qualified as a final and appealable order, then the Bronsons' appeal of the denial of the reconsideration motion would be untimely.  See Slimick v. Silva (In re Slimick), 928 F.2d 304, 306-07 (9th Cir. 1990).  However, we do not consider the Interim Order to be a final and appealable order, because it is clear from the language of the Interim Order that the court did not intend that order to be its "final act in the matter."  Id.

7

2012); Hunt v. Imperial Merchant Servs., Inc., 560 F.3d 1137, 1141 (9th Cir. 2009).

**DISCUSSION**

As a threshold matter, we note that the only ruling properly before this Panel is the denial of the Bronsons' Reconsideration Motion. All other matters the Bronsons have raised are beyond the scope of this appeal, including but not limited to TMT's adversary proceeding seeking a deficiency judgment, the Bronsons' plan confirmation proceedings, and TMT's motion to convert the case from chapter 11 to chapter 7. The Relief From Stay Order, entered on August 22, 2008, also is beyond the scope of this appeal. If the Bronsons desired to appeal that order, they should have timely filed an appeal from it no later than September 2008. See Rule 8002; see also United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367, 1380 (2010) (holding that bankruptcy court's erroneous order nonetheless was binding and enforceable against appellant because appellant had notice of the proceedings but did not appeal that order).

We also should note the scope of relief that we may grant to an appellant who prevails on appeal. Under Rule 8013, if the Bronsons were to prevail, we could reverse or modify the order on appeal, and we could remand for further proceedings consistent with our determination as to whether the bankruptcy court erred in entering the order appealed.

Here, however, the Bronsons ask us to do much more than merely determine whether the court erred in denying the Reconsideration Motion. The Bronsons also request the following additional relief: (1) unwinding of the trustee's sale of the

8

Office Building that took place in July 2009; (2) return of ownership of the Office Building to the Bronsons; (3) reconversion of their bankruptcy case to chapter 11; (4) reversal of all other rulings of the bankruptcy court since June 2008; (5) a determination that TMT and his counsel are guilty of misconduct; (6) direction to the bankruptcy court to hold evidentiary hearings to determine whether sanctions against TMT and his counsel are appropriate under Civil Rules 11 and 37; (7) compulsion of TMT and his counsel to respond to the Bronsons' subpoenas and other discovery requests; (8) award of all of the Bronsons' attorney's fees and costs; and (9) direction to the Ninth Circuit Court of Appeals to conduct a judicial misconduct investigation of the bankruptcy judge presiding over their bankruptcy case.

The Bronsons have not pointed us to any authority that would permit us, by virtue of this appeal, to grant such relief. Nor are we aware of any such authority. Simply put, our role in this appeal necessarily is limited to review of the order denying the Bronsons' Reconsideration Motion. But we may not fulfill even that limited role unless this appeal presents a live case or controversy, as discussed immediately below.

Even if we were to reverse the order on appeal and direct full reinstatement of the automatic stay, the reinstatement of the automatic stay would not prevent TMT from foreclosing. That foreclosure occurred some years ago, in July 2009. In other words, the action the Bronsons wanted to enjoin – the foreclosure of the Office Building – already has occurred. This calls into question whether this appeal presents a live case or controversy.

9

See Murphy v. Hunt, 455 U.S. 478, 481 (1982). This type of mootness is jurisdictional and arises from Article III of the Constitution, which provides that a dispute is not justiciable in federal court unless it presents a live case or controversy. See Arizonans for Official English v. Ariz., 520 U.S. 43, 66-67 (1997). As the Supreme Court stated in Arizonans for Official English: "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Id. at 67 (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).

When the action sought to be enjoined already has occurred, an appeal from the denial or the discontinuance of injunctive relief becomes constitutionally moot. See, e.g., Vegas Diamond Props., LLC v. FDIC, 669 F.3d 933, 936 (9th Cir. 2012); In Defense of Animals v. Dep't of Interior, 648 F.3d 1012, 1013 (9th Cir. 2011); Ctr. for Biological Diversity v. Lohn, 511 F.3d 960, 963-64 (9th Cir. 2007); Seven Words LLC v. Network Solutions, 260 F.3d 1089, 1095 (9th Cir. 2001); Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir. 1978).

We acknowledge that, when the order on appeal authorizes a sale of real property, we have invoked a different mootness doctrine – bankruptcy sale mootness – in declaring an appeal from the sale order moot. See Vista Del Mar Assocs., Inc. v. W. Coast Land Fund (In re Vista Del Mar Assocs., Inc.), 181 B.R. 422, 425 (9th Cir. BAP 1995). This mootness doctrine focuses on the "particular need" for the finality of bankruptcy sale orders, and it applies whenever the appellant fails to obtain a stay pending appeal and the sale is consummated. See id. at 424. Vista Del

10

_Mar Assocs._ recognized two exceptions to bankruptcy sale mootness: "(1) where the debtor has a statutory right of redemption, and (2) where other state law would permit the sale to be set aside." _Id._ at 425 (citing _Ewell v. Diebert (In re Ewell)_, 958 F.2d 276, 280 (9th Cir. 1992)). We tend to doubt that the exceptions to bankruptcy sale mootness apply in the context of an appeal from an order denying or discontinuing an injunction, when the act sought to be enjoined already has occurred. _See_ _Vegas Diamond_, 669 F.3d at 936 (fact that sale might be subject to unwinding did not prevent appeal of order denying preliminary injunction from becoming moot when the sale sought to be enjoined already had occurred).

However, even if we were to consider the bankruptcy sale mootness exceptions, these exceptions would not help the Bronsons here. Under the facts of this case, Arizona law does not give the Bronsons either a right of redemption or the right to unwind the sale. Indeed, Arizona law explicitly provides that the foreclosure sale itself cut off any such rights that the Bronsons otherwise might have asserted. _See_ A.R.S. § 33-811(C) and (E); _see also_ _T Capital, LLC v. TD Serv. Co. of Ariz._, 275 P.3d 598, 600 (Ariz. 2012); _Madison v. Groseth_, 279 P.3d 633, 637-38 (Ariz. Ct. App. 2012).

In sum, we cannot grant any effective relief to the Bronsons. Even if they were to prevail on appeal, and even if we were to remand for reconsideration of the Relief From Stay Order, the act the Bronsons sought to prevent by invocation of the stay, the foreclosure of the Office Building, already has occurred. And we know of no authority that would enable the Bronsons to

11

unwind that sale.

## CONCLUSION

For the reasons set forth above, we DISMISS this appeal as moot.[7]

---

[7]Even if we were to reach the merits of this appeal, we would be inclined to affirm. The Bronsons' requests for relief under Civil Rule 60(b)(2), (3) and (6) were untimely and hinged upon their contention that TMT had some sort of duty to disclose the particulars concerning the Broad Property. We know of no such duty. Any reliance of the Bronsons on Civil Rule 26(a) is misplaced. It does not apply in contested matters, which include relief from stay motions. See Rule 9014(c). Moreover, just because the Bronsons believed that the Broad Property was comparable to the Office Building does not necessarily make it so for valuation and disclosure purposes. Thus, we are not persuaded that the bankruptcy court erred in denying the Bronsons' Reconsideration Motion.

12