FILED

NOT FOR PUBLICATION

JUL 25 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>PAUL PHILLIP BARDOS,<br>dba CADMUS CONSTRUCTION CO.,<br><br>        Debtor.<br>_____<br>TWENTY-NINE PALMS ENTERPRISES<br>CORPORATION,<br><br>        Appellant,<br><br>v.<br><br>PAUL PHILLIP BARDOS,<br><br>        Appellee.<br>_____ | BAP No. CC-13-1316-PaKuBl<br><br>Bankr. No. 10-41455-DS<br><br><br><br><br><br><br><br>**M E M O R A N D U M**[1] |

Argued and Submitted on June 26, 2014
at Pasadena, California

Filed - July 25, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

Appearances:    Richard M. Freeman of Sheppard, Mullin, Richter & Hampton, LLP, argued for appellant Twenty-Nine Palms Enterprises Corporation; Martha A. Warriner argued for appellee Paul Phillip Bardos; Maria J. Nunez argued for Leslie T. Gladstone, Proposed Successor Liquidating Agent.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: PAPPAS, KURTZ and BLUMENSTIEL,[2] Bankruptcy Judges.

Appellant Twenty-Nine Palms Enterprises Corporation ("29 Palms") appeals the bankruptcy court's order approving a modification of debtor Paul Phillip Bardos' ("Bardos") confirmed chapter 11[3] plan, and authorizing the sale of Bardos' residence for $625,000. We DISMISS this appeal as MOOT.

**FACTS**

Bardos was a contractor. In February 2007, Bardos entered into an agreement with the Twenty-Nine Palms Band of Mission Indians of California (the "Band") to oversee a number of development and construction projects undertaken by the Band and its corporate entity, 29 Palms,[4] related to the Spotlight 29 Casino and associated grounds in Riverside County. Bardos apparently functioned both as an owner's representative on behalf of 29 Palms for all these projects, as well as served as the contractor on one or more of them, doing so under various names, including his wholly owned proprietorship, Cadmus Construction Co. ("Cadmus").

---

[2] Hon. Hannah L. Blumenstiel, United States Bankruptcy Judge for the Northern District of California, sitting by designation.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

[4] Unless necessary to distinguish them, we will refer to either the Band or 29 Palms as 29 Palms.

-2-

**The Cadmus State Court Action and Judgment**

On July 23, 2009, 29 Palms filed a complaint in California state court against Cadmus and, indirectly, Bardos. Twenty-Nine Palms v. Cadmus Construction Co., et al., CIVRS908132 (San Bernardino Superior Court). In it, because Cadmus was not a licensed contractor in California, 29 Palms alleged two counts for violation of Cal. Bus. & Prof. Code §§ 7031 and 17200, and asked the court to order that Cadmus disgorge all of the fees 29 Palms had paid it, amounting to approximately $750,000, plus interest. The California court entered a summary judgment awarding 29 Palms a judgment against Cadmus for $917,043.09 plus post-judgment interest (the "Judgment"). Bardos appealed the Judgment to the California Court of Appeals. In a published opinion, the court ruled against Bardos and affirmed the Judgment, noting that Bardos was fully responsible for the acts of his proprietorship, Cadmus. Twenty-Nine Palms Enters. Corp. v. Bardos, 210 Cal. App. 4th 1435, 1454 (2012).

Bardos filed a petition asking the Supreme Court of California to review the Court of Appeals decision. The petition was denied on February 20, 2013. Bardos then filed a petition for certiorari (the "Cert. Petition") with the United States Supreme Court. As discussed below, Bardos voluntarily withdrew the Cert. Petition on June 25, 2013. Bardos v. Twenty-Nine Palms Enters. Corp., 133 S.Ct. 2884 (2013). We refer to these three appeals collectively as the "Cadmus Appeals."

**The Bankruptcy Case and Chapter 11 Plans**

Bardos filed a petition seeking relief under chapter 11 of the Bankruptcy Code on September 29, 2010, about three weeks

after filing the appeal with the California Court of Appeals. Based upon the stipulation of the parties, the bankruptcy court granted relief from the automatic stay in the bankruptcy case so that the appeal could proceed.

Bardos filed his initial proposed Plan of Reorganization and Disclosure Statement (the "First Disclosure Statement") on March 29, 2012. In the plan, Bardos offered alternative approaches he called "Plan A" and "Plan B" to dealing with his financial challenges. Plan A proposed a fairly unremarkable reorganization of Bardos' financial affairs, with Bardos proposing to pay his creditors' claims out of the business income generated by his construction businesses. However, if Bardos was unsuccessful in the Cadmus Appeals, Plan B provided for liquidation of his assets. 29 Palms objected to the First Disclosure Statement arguing that it failed to provide sufficient information about Bardos' and his companies' incomes, any information about a pending grand jury investigation of Bardos, or a liquidation analysis to show the results of Bardos' proposed asset liquidation under Plan B.

In response, Bardos filed a First Amended Plan of Reorganization (the First Amended Plan) and First Amended Disclosure Statement. The First Amended Plan contained minor changes to address 29 Palms' objections but, importantly, added a provision stating that if Bardos were convicted in any criminal proceedings, any criminal conviction would act as a second "trigger" requiring him to liquidate under Plan B. The bankruptcy court allowed Bardos to submit a slightly modified Disclosure Statement (the "Second Amended Disclosure Statement"),

-4-

providing additional information about Bardos' recent federal criminal indictment. The bankruptcy court approved Bardos' Second Amended Disclosure Statement on May 29, 2012, and it remained the operative disclosure statement at the time of plan confirmation.

One of the focal points of the bankruptcy case and this appeal concerns Bardos' residence in Rancho Cucamonga, California (the "Property"). The Second Amended Disclosure Statement listed the Property as a Bardos asset, and represented that it had a value of $750,000, subject to a first mortgage in favor of Wells Fargo with a balance due of $328,000.

Bardos filed Second and Third Amended Plans of Reorganization. The amended plans contained only minor changes. Shortly thereafter, Bardos and 29 Palms resolved their remaining differences in the bankruptcy case in a stipulated agreement allowing Bardos to confirm the Third Amended Plan according to the terms of the stipulation. There were no objections to confirmation, and the bankruptcy court approved the parties' stipulation, and entered an order confirming the Third Amended Plan on October 28, 2012 (the "Confirmed Plan" and "Confirmation Order"). Like his prior plans, the Confirmed Plan provided two means for Bardos to pay creditors: Plan A, the reorganization option, provided that all creditors would be paid in full from income generated over time by Bardos' wholly owned corporation, Bardos Construction, Inc., together with the proceeds from a successful outcome to the Cadmus Appeals; and Plan B, the liquidation option, required that Bardos' assets be sold and the sale proceeds distributed to creditors if any one of three events

occurred: (1) if he lost or withdrew the Cadmus Appeals; (2) if he were convicted in the pending federal criminal case;[5] or (3) if Bardos were to otherwise default under Plan A. In addition, the Confirmation Order provided that, if Bardos were convicted, a liquidating agent would be appointed to oversee the liquidation of the assets.

### Bardos' Motion to Modify the Confirmed Plan

By early May 2013, none of the events that would trigger Plan B had occurred. Bardos decided to implement Plan B immediately, rather than to await the events which would "force his hand." Since the Confirmed Plan did not allow him to implement Plan B without a triggering event, Bardos filed a motion to modify the Confirmed Plan (the "Modification Motion"). The Modification Motion provided for the immediate implementation of Plan B under the Confirmed Plan, including termination of Bardos' business operations that had supported plan payments under Plan A. Of particular interest in this appeal are the

[5] In an opposition to Bardos' motion to dismiss this appeal, 29 Palms asks the Panel to take judicial notice of a "First Superseding Indictment" entered against Bardos and his alleged co-conspirators in the criminal case, which alleges that Bardos engaged in conspiracy, bribery, money laundering and tax evasion in dealings with 29 Palms. Since none of these allegations are relevant to the issues on appeal, 29 Palms' request for judicial notice is DENIED.

Of course, under the Confirmed Plan, were Bardos convicted in the federal case, that conviction would trigger implementation of Plan B, including the appointment of a liquidating agent. The parties have informed the Panel that Bardos eventually entered a guilty plea to one count of the indictment (income tax evasion). Therefore, because he stands convicted in the federal case, Plan B was triggered under the Confirmed Plan.

Modification Motion's provisions relating to liquidation of the Property:

> Plan B provides for, among other things, the listing and sale of the [Property], which is Debtor's residence. That [P]roperty has been listed for sale for the sum of $625,000; the Plan requires that escrow be closed within 6 months. It is also Debtor's desire that this [P]roperty be sold as quickly as is reasonable in the present real estate market.

Modification Motion at ¶ II(5).

> The [Property] shall be sold at a market price within 6 months pursuant to Plan B, listed by the Debtor at $625,000 in consultation with a qualified local real estate broker[.]

Modification Motion at ¶ VI(C).

29 Palms objected to the Modification Motion, raising two arguments:

> 29 Palms is not opposed to the Debtor implementing Plan B[;] however, [Debtor] should be required to abandon his appeal to the [U.S.] Supreme Court as indicated in the motion. Additionally, 29 Palms is opposed to the Debtor's proposal to sell his primary residence at a discount to the detriment of his unsecured creditors. The Debtor is proposing to list and sell the [Property] for $625,000, which may be substantially below fair market value and well below the value he stated in the Plan ($750,000).

Attached to the 29 Palms opposition was the Declaration of Bram Hanono, one of its attorneys. The Hanono Declaration in turn attached two screen prints from internet sites Hanono attested he had recently visited. One printout was from zillow.com, ostensibly containing information about the value of the Property. The second attachment was from dqnews.com, a website operated by the Los Angeles Times, with information regarding the average year-to-year sale price of homes located in the same zip code as the Property.

Bardos responded to 29 Palms' opposition to the Modification Motion. Bardos disagreed with 29 Palms that he should be compelled to abandon his appeal to the Supreme Court, suggesting that it was only an option that he might take. Bardos also argued in favor of the $625,000 listing price for the Property and submitted documentary evidence, including a local broker's assessment of the value of the Property based upon comparable sales of similarly situated houses. Bardos argued that the Zillow estimate and other website printout were not admissible evidence.

The bankruptcy court conducted a hearing on the Modification Motion on June 6, 2013. Early on, the court sustained Bardos' objection to 29 Palms' attempt to submit the zillow.com and other website printout, noting that "[t]he Zillow and other website printouts are not evidence." Hr'g Tr. 5:13-15, June 6, 2013.

The court also agreed with Bardos concerning his proposal to list and sell the Property for $625,000:

> The evidence that is here suggests that the value that the [P]roperty was listed for and appears to be about to be sold for is an appropriate value, notwithstanding the older appraisal and the amount set forth in the disclosure statement.

Hr'g Tr. 5:17-21. However, the bankruptcy court also advised the parties:

> I don't have as much of an issue with the sale price of the house as I do with the appeal. It seems to me that the stipulation and the plan were very clear on the conditions that would trigger the implementation of Plan B, and now what the Debtor's asking for is what I view as a material modification of the plan. . . . I don't see how I can grant the motion. The [] conditions [of the Confirmed Plan] haven't been satisfied.

Hr'g Tr. 10:22–11:6.

-8-

During a recess, the parties apparently reached a compromise concerning Bardos' pending Cert. Petition and some other issues not involved in this appeal. After the bankruptcy court reconvened, the following colloquy ensued:

> WARRINER [Bardos' Counsel]: And we would also assume that in granting the motion, obviously you are letting the sale [of the Property to] proceed without a liquidating agent.
>
> THE COURT: Uh-huh.
>
> WARRINER: — and sustaining our evidentiary objection and approving the values for the other assets. If all of those are approved by the Court, Mr. Bardos will withdraw the petition for cert.
>
> THE COURT: Okay. Mr. Warum:
>
> WARUM [29 Palms' Counsel]: That is satisfactory, Your Honor. . . .
>
> WARRINER: And the only other thing that I've added to the [proposed order granting the Modification Motion] is an abstract of judgment that showed up on the title report in favor of [29 Palms], and [Mr. Warum] has agreed that his client will withdraw that. I'd like to include that in the order.
>
> THE COURT: Okay. . . . Mr. Warum, does that work for you?
>
> WARUM: That's fine, Your Honor. No objections.

Hr'g Tr. 13:24–15:7.

The bankruptcy court concluded the hearing by instructing Bardos' counsel to prepare an agreed order that "will be entered right away." Hr'g Tr. 16:1. Bardos submitted an order bearing the endorsement of counsel for 29 Palms as "approved as to form and content." The bankruptcy court entered the order granting the Modification Motion on June 19, 2013 (the Modification Order"). It provided, in relevant part:

> The [Modification] Motion is granted, subject to the

following:

> A. The Debtor shall dismiss his appeal to the United States Supreme Court in the matter of Paul Bardos, Petitioner v. Twenty-Nine Palms Enters. Corp, Respondent. . . .
>
> B. The Debtor may proceed with the sale of the [Property], as proposed in the Motion, on behalf of the Bankruptcy Estate, free and clear of the abstract of judgment in favor of 29 Palms, which abstract shall be released by 29 Palms prior to the close of escrow[.]

Modification Order at 2.

Consistent with the Modification Order, the Supreme Court appeal was dismissed upon stipulation of the parties on June 25, 2013. However, on July 3, 2013, 29 Palms filed a timely appeal of the Modification Order. 29 Palms did not seek a stay of the Modification Order in the bankruptcy court or from this Panel.

**Events Occurring During This Appeal**

Bardos filed a motion to dismiss this appeal on August 15, 2013, arguing that, because 29 Palms had benefitted from the Modification Order, it was estopped from appealing it (the "First Dismissal Motion"). 29 Palms opposed the First Dismissal Motion. A BAP motions panel denied the First Dismissal Motion in an order entered October 15, 2013.

Bardos filed a second dismissal motion (the Second Dismissal Motion"), representing that, on December 4, 2013, the Property had been sold as allowed in the Modification Order to unrelated third parties, and that the sale proceeds had been distributed to creditors as provided in the Confirmed Plan shortly thereafter. Thus, Bardos argued, the 29 Palms appeal of the Modification Order was now moot. 29 Palms opposed the Second Dismissal Motion, arguing that, even if the sale of the Property could not

be undone (which it challenges), the Panel could still grant 29 Palms effective relief. The BAP motions panel referred the resolution of the Second Dismissal Motion to this merits Panel.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). The Panel has jurisdiction over appeals from the bankruptcy court's final orders under 28 U.S.C. § 158, and the Modification Order was a final order. Everett v. Perez (In re Perez), 30 F.3d 17, 20 (9th Cir. 1994). However, we lack jurisdiction to decide moot appeals. United States v. Patullo (In re Patullo), 271 F.3d 898, 900 (9th Cir. 2001). If an appeal becomes moot while it is pending before the Panel, we must dismiss it. Id. Even so, the Panel always has jurisdiction to determine its own jurisdiction, including a determination of mootness. Hupp v. Educ. Credit. Mgmt. Corp. (In re Hupp), 383 B.R. 476, 478 (9th Cir. BAP 2008).

## ISSUE

Whether this appeal is moot.

## STANDARD OF REVIEW

We review our own jurisdiction, including questions of mootness, de novo. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003).

## DISCUSSION

### Status of the Parties to the Appeal

As a preliminary matter, we address a procedural anomaly about which the Panel was first informed at the oral argument in this appeal. Apparently, on April 9, 2014, after briefing was

-11-

completed in this appeal, a liquidating agent had been appointed by the bankruptcy court because Bardos had entered a guilty plea in the federal criminal case.

Counsel for Bardos informed the Panel that the parties had stipulated to the appointment of a successor liquidating agent in the bankruptcy case and that an order had been submitted to the bankruptcy court for its entry. Thus, Bardos' counsel conceded that the successor liquidating agent should likely be substituted as the real party in interest in the place of Bardos in this appeal.[6]

Counsel for the proposed successor liquidating agent, who also appeared at the argument, informed the Panel that the successor liquidating agent intended to join 29 Palms in requesting that the bankruptcy court's Modification Order be reversed. Counsel for Bardos indicated that while Bardos did not dispute the successor liquidating agent's standing to participate in the appeal, Bardos did not agree with the successor

---

[6] The Confirmation Order required that a liquidating agent be appointed if Bardos was convicted in the federal criminal case. Bardos was convicted, and the bankruptcy court approved the appointment of Squar Milner, LLP, as liquidating agent on April 9, 2014 (the "Liquidating Agent Order"). The Liquidating Agent Order directed Debtor to turn over all assets of the estate to the liquidating agent "to liquidate and administer in accordance with the provisions of the Plan and the Bankruptcy Code." Liquidating Agent Order at 1, April 9, 2014.

On June 23, 2014, Bardos, 29 Palms and Squar Milner submitted a stipulation to the bankruptcy court informing the court that Squar Milner desired to be replaced as liquidating agent. The parties requested appointment of Leslie Gladstone as successor liquidating agent.

The bankruptcy court approved the stipulation appointing Leslie Gladstone as successor liquidating agent on July 23, 2014.

liquidating agent's position regarding the merits of this appeal.

Despite these somewhat perplexing and surprising developments about the status of the parties to this appeal, the Panel directed that oral argument proceed, hearing from counsel for Bardos, the proposed successor liquidating agent, and 29 Palms. We conclude that questions concerning the parties are, under the circumstances, not an impediment to the Panel's disposition of this appeal. Because we decide below that this appeal is equitably moot, the Panel lacks jurisdiction to consider the merits of this appeal, including whether or not to reverse the decision of the bankruptcy court. In re Patullo, 271 F.3d at 900 (a federal court cannot exercise jurisdiction over a moot appeal). Thus, even assuming the proposed successor liquidating agent is a proper party to the appeal, we do not address the implications of the joint request of the liquidating agent and 29 Palms for reversal.

## Mootness

We cannot exercise jurisdiction over a moot appeal. In re Pattullo, 271 F.3d at 900; GTE Cal., Inc. v. FCC, 39 F.3d 940, 945 (9th Cir. 1994) ("The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution."). A moot case is one where the issues presented are no longer live, and no case or controversy exists. Pilate v. Burrell (In re Burrell), 415 F.3d 994, 998 (9th Cir. 2005). The test for mootness is whether an appellate court can still grant effective relief to the prevailing party if it decides the merits in his or her favor. Id. If a case becomes moot while the appeal is pending, an appellate court must dismiss

-13-

the appeal. In re Pattullo, 271 F.3d at 900.

Constitutional mootness, in the strict sense, occurs when an appellate court cannot give the appellant any relief whatsoever in the event that it decides in appellant's favor. Felster Publ'g v. Burrell, 415 F.3d 994, 998 (9th Cir. 2005). This appeal is not moot in the Constitutional sense because the Panel has the authority to grant the relief requested, that is, we could reverse the bankruptcy court's decision approving the plan modification and sale of the Property.

However, the case law recognizes that practical and equitable factors should be taken into consideration in determining if an appeal is moot. This is the doctrine of equitable mootness. An appeal becomes equitably moot when:

> appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court, thus "permitting such a comprehensive change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal." Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.), 652 F.2d 793, 798 (9th Cir. 1981).

Focus Media, Inc. v. NBC (In re Focus Media, Inc.), 378 F.3d 916, 922 (9th Cir. 2004). In other words, equitable principles may require dismissal of the appeal when the appellant neglects to obtain a stay pending appeal and the rights of third parties intervene. Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006 (9th Cir. 1993); Darby v. Zimmerman (In re Popp), 323 B.R. 260, 271 (9th Cir. BAP 2005).

The party asserting equitable mootness must demonstrate that the case involves transactions "so complex or difficult to unwind" that equitable mootness applies. Lowenschuss v. Selnick

-14-

(In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999). In deciding whether an appeal is equitably moot, the Ninth Circuit instructs that we must consider the consequences of the remedy on appeal, and the number of third parties who have changed their position, in reliance on the validity of the order on appeal. Kaonohi Ohana, Ltd. v. Sutherland (In re Kaonohi Ohana, Ltd.), 873 F.2d 1302, 1306 (9th Cir. 1989). The Ninth Circuit recently provided guidelines for our inquiry into equitable mootness:

> We endorse a test similar to those framed by the circuits that have expressed a standard: We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

Motor Vehicle Cas. Co. v. Thorpe Insulation Ins. Co. (In re Thorpe Insulation Ins. Co.), 677 F.3d 869, 881 (9th Cir. 2012).

In Thorpe Insulation, and the other circuit opinions it cites, the first and most important consideration is if the party seeking to appeal failed to seek a stay. Id. at 881 (appellant may not "sit on its rights"); Nordhoff Invs. v. Zenith Elecs. Corp., 258 F.3d 180, 186 (3d Cir. 2001) ("It is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief)[.]"); Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944 (2d Cir. 1993) (appellant must "pursue[] with

-15-

diligence all available remedies to obtain a stay of execution of the objectionable order"). Here, 29 Palms did not seek a stay of the bankruptcy court's order pending appeal either in the bankruptcy court or with this Panel; instead, it "sat on its rights."

In its opening brief, 29 Palms attempted to excuse its failure to request any stay pending appeal concerning a sale of the Property by explaining that:

> 29 Palms has been informed by Bardos that the Property has not been sold and that it cannot be sold until this appeal is resolved because the title company will not issue a clean title report; therefore there are no issues of mootness or need for stay pending appeal.

29 Palms Op. Br. at 2, n.1. Apparently, 29 Palms elected not to seek a stay of the Modification Order believing that, as a practical matter, the Property could not be sold because this appeal prevented Bardos from providing insurable title to a buyer. Even assuming there may have been some communication between 29 Palms and Bardos concerning difficulties obtaining a title policy, 29 Palms has not argued that Bardos agreed not to sell the Property during the pendency of the appeal. To the contrary, the Modification Order expressly empowered Bardos to sell the Property, and so he did. 29 Palms, on the other hand, had the right to seek a stay of that sale; it did not. Simply put, while Bardos exercised his rights, 29 Palms did not "diligently" pursue its rights to stay a sale of the Property.

The other relevant inquiries[7] in Thorpe focus on the rights

---

[7] Because 29 Palms never requested a stay pending appeal, we do not consider the second Thorpe element, substantial consummation.

of third parties, and whether intervening transactions have taken place that are "so complex or difficult to unwind" as to create an uncontrollable situation for the bankruptcy court. In this case, 29 Palms asserts that the purchasers of the Property would not be prejudiced by an order voiding the sale because they would have recourse to reimbursement from the title insurance company that insured their good title in the sales transaction. 29 Palms' Opposition to Motion for Mootness at 1-2. We disagree.

Of course, neither the Property purchasers nor their title insurer are parties to this appeal, nor did they participate in the proceedings before the bankruptcy court. Under these facts, we simply cannot be certain as to the impact of our possible decision reversing the bankruptcy court's order approving the sale. Presumably, both the purchasers and title company relied upon 29 Palms' failure to seek a stay of that order in proceeding to close the sale.

In addition, 29 Palms must remember that the title insurer's contract is with the purchasers, not Bardos. We therefore cannot know whether the title company would be obliged to compensate the purchasers for any damages or expenses they might incur if the sale of the Property by Bardos to them is rescinded. As can be seen, then, 29 Palms takes a cavalier approach to evaluating the relative equities and potential consequences to third parties of any decision to undo the sale.

Moreover, the impact and efficacy of an order in this appeal requiring that the distributions from the sale proceeds be disgorged would be, at best, uncertain. Indeed, proceedings by the bankruptcy court to compel the several creditors who have

-17-

received full payment of their claims to return approximately $620,000 to the estate may be problematic, lengthy and expensive. And although the mortgage creditor and bankruptcy case administrative creditors would continue to hold claims senior to 29 Palms if the sale is undone, there is no guarantee that any future sale of the Property would generate as much for them as they have already received.

Finally, we are concerned that if the Property is put back onto the market, the prospects for another sale are unclear and additional holding costs will be incurred until another sale can be arranged.

All things considered, we conclude that undoing the sale of the Property and recovery of the sale proceeds at this late stage of the proceedings could adversely impact the rights of third parties and could require potentially extensive, expensive, and lengthy proceedings in the bankruptcy court. Since 29 Palms did not diligently seek a stay pending appeal, and the relief requested by 29 Palms would be complex and difficult for the Panel to provide, we conclude this appeal is equitably moot.

In response to Bardos' mootness contention, 29 Palms argues that since the bankruptcy court did not enter an order that the buyers of the property were good faith purchasers for purposes of § 363(m), any protections against reversal or modification of a sale order on appeal are not available to the buyers, relying on the Ninth Circuit's decision in <u>Algeran, Inc. v. Advance Ross Corp.</u>, 759 F.2d 1421, 1423-24 (9th Cir. 1985). 29 Palms' argument lacks merit.

While, admittedly, no § 363(m) finding was made by the

-18-

bankruptcy court in connection with the sale of the Property in this case, it is of no consequence to determining whether this appeal is equitably moot. Vista del Mar Assocs., Inc. v. W. Coast Land Fund (In re Vista del Mar Assocs, Inc.), 181 B.R. 422, 424 (9th Cir. BAP 1995). 29 Palms offers us no case law clearly holding that § 363(b) or (m) applies to a sale of property made pursuant to a confirmed chapter 11 plan. Such sales are not subject to § 363, but are authorized by another Code provision which requires that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan." § 1123(a)(5)(B); see also In re Smurfit-Stone Container Corp., 2010 Bankr. LEXIS 1971, at *26 (Bankr. D. Del. 2010) (a sale pursuant to a plan may be approved by a bankruptcy court without reference to the requirements of § 363).

In sum, when it elected not to seek a stay of the bankruptcy court's order authorizing Bardos to sell the Property and distribute the sale proceeds, 29 Palms assumed the risk that this appeal would become equitably moot. At this point, even if possible, unwinding the sale and distribution of the sale proceeds would be complex, impractical, and would potentially prejudice the rights of third parties. Therefore, the appeal is equitably moot.

///

///

///

-19-

**CONCLUSION**

This appeal is DISMISSED.[8]

---

[8] Because our decision is founded upon mootness, we do not reach the merits. We also express no opinion concerning whether the successor liquidating agent could seek some form of relief from the Modification Order in the bankruptcy court via motion under Rule 9024 (incorporating Civil Rule 60(b)).