# FILED

JUL 9 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re: | BAP No. NC-18-1284-STaB |
| DALE NORMAN HARMS, | Bk. No. 18-40758 |
| Debtor. | |
| DALE NORMAN HARMS, | |
| Appellant, | |
| v. | **OPINION** |
| BANK OF NEW YORK MELLON, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Sacramento, California

Filed – July 9, 2019

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Charles D. Novack, Chief Bankruptcy Judge, Presiding

Appearances:   James T. Imperiale argued for appellant; Erin M. McCartney of Zieve, Brodnax & Steele, LLP argued for appellee.

Before: SPRAKER, TAYLOR, and BRAND, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Chapter 13[1] debtor Dale Norman Harms appeals from an order granting the motion of the Bank of New York Mellon ("BONYM") for relief from the automatic stay and permitting BONYM to proceed with a nonjudicial foreclosure proceeding. BONYM completed its foreclosure and argues that the appeal is now moot. Even though BONYM is correct that reversal of the bankruptcy court's order would not affect the completed nonjudicial foreclosure, the relief from stay order also permitted BONYM to pursue unlawful detainer proceedings to recover possession of the property from Harms and his spouse. Because there is nothing in the record to establish that BONYM already has exercised its unlawful detainer remedy, we may afford some relief to Harms if we were to reverse the relief from stay order and reinstate the automatic stay. Accordingly, this appeal is not moot.

On appeal, Harms disputes BONYM's standing. But BONYM sufficiently proved its standing in the bankruptcy court. Its agents presented the bankruptcy court with a copy of the subject promissory note indorsed in blank. The agents also presented evidence that the original of the note was within their custody and control and specified the address

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

where the original note is kept. Harms presented no contrary evidence regarding possession of the original note. Nor was there any evidence indicating that anyone else has asserted a competing right to enforce the note. Under these circumstances, we AFFIRM.

## FACTS

**A.   The Underlying Dispute Between The Parties**.

The dispute between the parties arose from a promissory note in the principal amount of $392,000.00 and a deed of trust, both dated April 14, 2005. The note and the deed of trust identify Harms and his wife Laurie as the borrowers and Ampro Mortgage Corporation as the lender. The deed of trust further identifies Ampro as the trustee under the deed of trust. Mortgage Electronic Registration Systems, or MERS, is identified as the beneficiary under the deed of trust "solely as nominee" for Ampro, its successors and assigns.

The deed of trust states that it secures repayment of the loan memorialized in the note. The collateral for the loan is a single-family residence on West Cypress Road in Oakley, California. The deed of trust was recorded on April 22, 2005, in the Contra Costa County Recorder's Office. In April 2010, MERS assigned to BONYM its beneficial interest under the deed of trust.

As for the note, the copy presented to the bankruptcy court has three indorsements affixed on the reverse side of the last page: (1) an

3

indorsement by Ampro in favor of Countrywide Document Custody Services; (2) an indorsement by Countrywide Document Custody Services in favor of Countywide Home Loans, Inc.; and (3) an indorsement in blank by Countywide Home Loans, Inc.

**B.     Harms' History Of Bankruptcy Filings And His Transfer Of The Property.**

The underlying bankruptcy was the fourth involving Harms, his spouse, and the property within an eight-year time span. In July 2010, Harms and his spouse commenced a chapter 13 bankruptcy case. That case was dismissed in October 2010. In October 2015, Harms commenced a chapter 7 bankruptcy case. Harms received a discharge in that case in January 2016. That case was closed the day after the court entered its discharge order. In September 2016, Harms' spouse commenced a chapter 7 bankruptcy case. Harms' spouse received a discharge in that case in December 2016. That case also was closed the day after the court entered its discharge order. Harms and his spouse commenced their current chapter 13 bankruptcy case in April 2018.

Meanwhile, in September 2013, Harms and his spouse transferred the property to an entity known as "The Resting Place Eleemosynary Trust." In their current bankruptcy schedules, Harms and his spouse identified themselves as co-trustees of this trust and claimed that they only hold legal title to the property for the trust's benefit.

4

**C.     BONYM's Motion For Relief From Stay.**

In August 2018, BONYM moved for relief from the automatic stay. BONYM sought modification of the stay to permit it to exercise its remedies under state law to foreclose on and recover possession of the property.

Along with its relief from stay motion, BONYM presented the court with copies of the note, the deed of trust, the assignment of the deed of trust, and the deed the Harms executed to transfer title to the property from themselves to the Resting Place trust. BONYM also presented the court with a relief from stay cover sheet, which provided basic information regarding the property and the loan. The cover sheet indicated that the loan was 104 months in arrears prepetition and 4 months in arrears postpetition. The cover sheet further indicated that the aggregate balance of the loan was $548,848.47, whereas the value of the property securing the loan was only $435,128.00.

BONYM's moving papers also included the declaration of Katisha Gill. Gill identified herself as a bankruptcy case manager for Shellpoint Mortgage Servicing. According to Gill, Shellpoint subserviced the loan on behalf of BONYM. Gill stated she had personal knowledge of the types of business records Shellpoint maintained in the ordinary course of business and the procedures Shellpoint followed in creating those records, including those records maintained for the subject loan. Gill explained that the

information set forth in her declaration was derived from Shellpoint's business records. As Gill put it, the records were made by persons with personal knowledge of the information contained in the records or from information transmitted by persons with personal knowledge.

In relevant part, Gill stated that BONYM had confirmed that it was in possession of the original promissory note. A copy of the note was attached to the declaration as Exhibit 1. Gill further stated that BONYM confirmed that the original note was housed at Bank of New York Fullerton on Burning Tree Road in Fullerton, California. But Gill did not specify how BONYM confirmed this information, other than her general reference to her knowledge derived from Shellpoint's business records.

Harms opposed the relief from stay motion. Harms disputed every aspect of the alleged loan transaction. Among other things, he claimed that Ampro never loaned him any money. He also denied he signed the note and the deed of trust. Alternately, Harms claims that the alleged loan transaction actually was an "investment contract" and that he is entitled to a share of the proceeds from the investment vehicle in which his note was invested. As a result, Harms maintains that BONYM is indebted to him, "not the other way around."

Harms further contended that BONYM has not and cannot establish that it has any rights, interests or entitlements under the note or the deed of trust. Specifically, he argued that BONYM had not presented admissible or

sufficient evidence to support its claim that it possessed the original note or otherwise was entitled to enforce the note. In particular, Harms contended that Gill's declaration testimony regarding possession of the original note did not qualify for the business records exception to the hearsay rule and hence was inadmissible.

On September 21, 2018, the bankruptcy court held a hearing on the relief from stay motion. Neither of the parties to this appeal have provided us with a transcript from this hearing. However, the bankruptcy court's hearing minutes entered on the bankruptcy docket indicate that the court directed BONYM to file a supplemental declaration "satisfying the federal rules of evidence" to support its relief from stay motion. The court also provided Harms with an opportunity to submit evidentiary objections, if any, to BONYM's supplemental declaration.

On September 28, 2018, BONYM filed the required supplemental declaration. The declarant, Nichole Renee Williams, identified herself as an Assistant Vice President for Bank of America, N.A. Williams identified Bank of America as the servicing agent for BONYM with respect to the subject note and deed of trust. She further identified Shellpoint as the subservicer for the loan.

Williams provided testimony similar to Gill's regarding her general knowledge of her employer's business records and the manner in which those records are created and maintained. But she also stated more

specifically as follows:

5. I reviewed the collateral file maintained by Bank of America, N.A. with regards to this loan. This collateral file is kept in the ordinary course of business of Bank of America, N.A. One of the purposes of maintaining this collateral file is to track the location of the Original Promissory Note. It is the regular practice of Bank of America, N.A. to maintain the location of the Original Promissory Note within the collateral file for a loan.

6. The records contained in this collateral file were made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; kept in the course of Bank of America, N.A.'s regularly conducted business activities; and it is the regular practice Bank of America, N.A. to make and maintain these records. These records are regularly relied upon within the regular practice of Bank of America, N.A. as servicer for the Debtor's loan.

7. As part of my job responsibilities with Bank of America, N.A., I have personal knowledge of and am familiar with the types of records contained in the collateral file in connection with Debtor's Loan and the procedures for creating those types of records. I have access to and have personally reviewed the collateral file maintained for Debtor's Loan. I have reviewed those records, have access to those records, and have personal knowledge of how they are maintained. Based upon those records, I have gained personal knowledge of the facts set forth herein and if called upon as a witness to testify , I could and would competently testify as to those facts under the penalty of perjury.

8. On August 13, 2018, upon reviewing the collateral file maintained for Debtor's Loan, I was able to confirm that Bank of America, N .A. was and is in possession of the Original Promissory Note. The collateral file confirmed possession as well as the current location of the Promissory Note. The Promissory Note, is held directly or through an agent, and that the Note is currently being housed with the Bank of New York Fullerton, 700 Burning Tree Rd., Fullerton, CA 92833.

Williams Decl. (Sept. 28, 2018) at ¶¶ 5-8.

On October 5, 2018, Harms objected to BONYM's supplemental declaration. In essence, Harms' objection to the Williams declaration was twofold. First, Harms objected that Williams did not claim to have personally seen the original note or personally to have verified BONYM's possession of the note. According to Harms, without such personal knowledge, Williams could not competently testify regarding possession of the original note. And second, Harms objected that Williams' knowledge was based on inadmissible hearsay. According to Harms, the information on which Williams admitted she relied in providing her declaration testimony did not qualify for the business records exception to the rule against hearsay. As Harms reasoned, Williams did not qualify as a custodian of the relevant records and was not otherwise qualified to lay the foundation for the business records exception.

The bankruptcy court overruled Harms' evidentiary objection to the Williams declaration. The court acknowledged that Williams did not claim

personally to have seen the original note. But the court held that Williams'
statements regarding her knowledge and review of Bank of America's
business records established her personal knowledge concerning their
contents and significance. The court further held that the Williams'
statements established her status as a person qualified to testify regarding
Bank of America's record-keeping practices and concerning the
prerequisites for application of the business records exception to the rule
against hearsay. Consequently, the court found that BONYM had
established its standing to seek relief from the automatic stay. The court
also found that BONYM had established cause for relief from the automatic
stay.[2]

On October 11, 2018, the bankruptcy court entered an order granting
BONYM relief from the automatic stay to pursue its state court remedies to
foreclose on and obtain possession of the property. Harms timely

---

[2] We do not know the specifics of the bankruptcy court's findings. The court's
order merely states that the relief from stay motion was granted "for the reasons stated
on the record." Order granting in part and denying in part creditor's motion for relief
from stay (Oct. 11, 2018) at p. 1. Neither of the parties provided us with the transcript
from the hearing at which the court apparently rendered its findings. Still, we may infer
that the court made these findings at the relief from stay hearing, or else the court
presumably would not have granted BONYM's relief from stay motion. In any event,
Harms has rendered it impossible for us to review these findings and has forfeited any
argument he might have made challenging the sufficiency and accuracy of these
findings. *See generally McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 417 (9th Cir. BAP
1999) (if an inadequate record is provided, "we look for any plausible basis upon which
the bankruptcy court might have exercised its discretion to do what it did. If we find
any such basis, then we must affirm.").

appealed.[3]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). Subject to the mootness discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Is this appeal moot?

2. Did the bankruptcy court abuse its discretion when it granted BONYM's relief from stay motion?

## STANDARDS OF REVIEW

We review mootness issues de novo. *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015); *Suter v. Goedert*, 504 F.3d 982, 985 (9th Cir. 2007).

We review the bankruptcy court's order on a motion for relief from stay for an abuse of discretion. *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996). We also review for an abuse of discretion the bankruptcy court's evidentiary rulings. *See Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or if its factual findings are illogical, implausible or not supported by the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

---

[3] The bankruptcy court denied BONYM's request for in rem relief. BONYM did not cross-appeal from this denial.

## DISCUSSION

### A.    Mootness Issue.

Under Article III of the Constitution, federal courts only can hear and decide actual cases and controversies. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). A case is constitutionally moot when there is no effective relief we can grant to the appellant even if he or she were to prevail. *Id.; Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 689 (9th Cir. BAP 2010). Parties advocating in favor of mootness bear a heavy burden: they must demonstrate that it is impossible to grant any meaningful relief. *Suter*, 504 F.3d at 986.

BONYM primarily sought relief from stay in order to complete a nonjudicial foreclosure against the property. BONYM has presented us with a copy of a recorded trustee's deed upon sale, which indicates that BONYM completed the foreclosure sale in November 2018. We can take judicial notice of the contents and recordation of the trustee's deed. *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 959 (N.D. Cal. 2010) (holding that documents recorded in the county recorder's office are matters of public record and are properly subject to judicial notice).

Once a nonjudicial foreclosure has occurred, appeals from relief from stay orders typically are considered moot. *See Onouli–Kona Land Co. v. Estate of Richards (In re Onouli–Kona Land Co.)*, 846 F.2d 1170, 1172–73 (9th

12

Cir. 1988); *see also Vista Del Mar Assocs., Inc. v. W. Coast Land Fund (In re Vista Del Mar Assocs., Inc.)*, 181 B.R. 422, 424-26 (9th Cir. BAP 1995) (holding that *Onouli–Kona*'s bankruptcy sale mootness rule applies even when the foreclosing creditor purchases the property, unless "the debtor has a statutory right of redemption," or "other state law would permit the sale to be set aside"). In other words, even if we were to reverse the relief from stay order, such reversal would not unwind or otherwise affect the foreclosure. *Id.*[4]

Even so, all relief is not completely beyond Harms' grasp. The relief from stay order also permitted BONYM to exercise its state law unlawful detainer rights in order to obtain possession of the property. BONYM has not submitted any evidence indicating whether it already has obtained possession of the property from Harms. Absent such evidence, we cannot find that no meaningful relief is available to Harms in the event he prevails. *See generally Suter*, 504 F.3d at 986 (holding that party asserting mootness has burden of establishing that there is no meaningful relief for

---

[4] Outside of the bankruptcy sale context, the Ninth Circuit Court of Appeals repeatedly has held that, when an action sought to be enjoined already has occurred, appeals from the denial or discontinuation of the injunction are constitutionally moot. *See, e.g., Vegas Diamond Props., LLC v. FDIC*, 669 F.3d 933, 936 (9th Cir. 2012); *In Defense of Animals v. Dep't of Interior*, 648 F.3d 1012, 1013 (9th Cir. 2011); *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963–64 (9th Cir. 2007); *Seven Words LLC v. Netw. Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001); *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978).

the court to provide).

Accordingly, we hold that BONYM has not met its burden to establish that this appeal is moot.

## B. BONYM's Motion For Relief From Stay.

Relief from stay proceedings are primarily procedural. *Veal v. Am. Home Mortgage Serv., Inc. (In re Veal)*, 450 B.R. 897, 914 (9th Cir. BAP 2011). They typically determine whether the equities justify releasing the moving creditor from the legal effect of the automatic stay. *Id.* Because of the limited scope of inquiry, neither the movant's claim nor its security should be litigated in the relief from stay proceeding. *Id.* (citing *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740–41 (9th Cir. 1985)); *see also Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994) ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect. . . ."). "Given the limited nature of the relief, . . . the expedited hearing schedule § 362(e) provides, and because final adjudication of the parties' rights and liabilities is yet to occur, . . . a party seeking stay relief need only establish that it has a **colorable** claim . . . . ." *In re Veal*, 450 B.R. at 914-15 (emphasis added) (citing *United States v. Gould (In re Gould)*, 401 B.R. 415, 425 n.14 (9th Cir. BAP 2009)).

Even so, to show both a colorable claim to the subject property and to establish its standing to seek relief from the stay, the moving creditor must present at least some evidence indicating that it has a right to foreclose,

14

either as a person entitled to enforce the underlying note or based on some other right under state law permitting it to commence foreclosure proceedings. *Id*. at 915-18 & n.34.[5]

As stated in *Veal*, the moving creditor may establish both its colorable claim and its standing by showing that it, or its agent, has possession of the original promissory note indorsed in blank. *Id.* at 917-18.[6] Harms has not challenged this legal principle. Nor does he deny that the bankruptcy court based its standing determination on its finding that BONYM's agent, Bank of America, held the original note indorsed in blank. Rather, Harms' arguments on appeal focus on the admissibility and sufficiency of the evidence demonstrating that Bank of America is BONYM's agent and

---

[5] Indeed, in California, a beneficiary under a deed of trust, or its agents, may conduct a nonjudicial foreclosure sale without establishing that they possess the original promissory note or that they have any interest in the note. *See Debrunner v. Deutsche Bank Nat'l Tr. Co.*, 204 Cal. App. 4th 433, 440 (2012) (citing Cal. Civ. Code § 2924(a)(1)). Here, it is uncontroverted that BONYM was the successor beneficiary under the subject deed of trust. Therefore, BONYM had standing to pursue foreclosure under California law and would have been entitled to relief from stay even if it had not established that it possessed the original note. In this appeal, we focus on BONYM's noteholder status and its evidence establishing its possession of the original note because that is what the parties and the bankruptcy court focused on. But we also could affirm on the separate and independent ground of Cal. Civ. Code § 2924(a)(1) and BONYM's status as the successor beneficiary under the deed of trust.

[6] See also Cal. Commercial Code §§ 3301(a) (a holder of the note is entitled to enforce the note); 3201 (an entity can become a holder of the note by negotiation – the transfer of possession of an instrument payable to the bearer); and 3205(b) ("[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone . . . .").

possesses the original note.

According to Harms, there was no evidence that Bank of America is BONYM's servicing agent. This contention is not accurate. In support of its motion, BONYM submitted the supplemental declaration of Bank of America's Assistant Vice President Nichole Williams. In her declaration, Williams stated that Bank of America is the servicing agent for BONYM with respect to the mortgage loan that is the subject of BONYM's relief from stay motion and that Shellpoint was subservicing the loan for Bank of America. She further stated that she knows this based on her review and knowledge of Bank of America's business records, which are kept in the course of Bank of America's regularly conducted business activities, in accordance with Bank of America's regular practices, contain information transmitted by persons with personal knowledge of that information, and were made at or near the time of the occurrence of the matters referenced in the records.

This evidence regarding Bank of America's status as BONYM's servicing agent was both admissible and sufficient. The bankruptcy court did not err in relying upon it to find that Bank of America was servicing the loan for BONYM, and using Shellpoint as a subservicer.

Alternately, Harms contends that Bank of America's records on this point were untrustworthy. To support this contention, Harms points to a letter he received in November 2018, **after** completion of the relief from

stay proceedings. He attached a copy of this letter as "attachment 2" to his opening appeal brief. In the letter, the author holds himself out to be an attorney for Bank of America and states that Bank of America transferred responsibility for servicing the loan to another entity in 2012 and thus Bank of America was not the foreclosing servicer. This comment is unremarkable as it generally is consistent with William's statements, as well as those made by Gill, that a subservicer acted on behalf of Bank of America as the servicing agent in the foreclosure proceedings. The author further identifies BONYM as the beneficiary under the deed of trust. From this, the author concludes that Bank of America "has no demonstrable interest in the loan – neither servicing nor ownership – and further lacks information regarding the current beneficiary sufficient to address your dispute . . . ."

We decline to consider this letter because the bankruptcy court had no opportunity to consider it. *See Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("[e]vidence that was not before the lower court will not generally be considered on appeal"); *Kirschner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988) (holding that papers not presented to the trial court before entry of the order on appeal are not properly part of the record and should not be considered in resolving the appeal).[7]

---

[7] If Harms had afforded the bankruptcy court with an opportunity to consider the November 2018 letter, we strongly suspect that the letter would not have

(continued...)

The only other comprehensible argument Harms makes on appeal concerns the admissibility and sufficiency of the evidence BONYM submitted to establish that Bank of America possesses the original note. Harms argues that Williams' declaration was inadmissible and insufficient to establish that BONYM, or its agents, possessed the original note. Harms insists that Williams relied on BONYM's business records rather than on Bank of America's. Harms therefore reasons that Williams was not a "qualifying witness" because she was speaking about BONYM's records and not Bank of America's records. But none of the evidence presented supports this claim. Rather, Williams' declaration is clear that she reviewed Bank of America's collateral file to gather the information presented. On this record, there was nothing to suggest that Williams was talking about BONYM's records as opposed to Bank of America's records.

---

[7](...continued)
undermined the bankruptcy court's confidence in the trustworthiness of Bank of America's business records indicating that Bank of America was the master servicing agent for Harms' loan. The November 2018 letter's statement regarding Bank of America's servicing and ownership interest in Harms' loan strikes us as nothing more than an advocate's statement of a legal position. More importantly, it seems significant to us that BONYM, who is the moving party and the successor beneficiary under the deed of trust, submitted the Williams declaration in support of its motion for relief from stay. Quite obviously, BONYM thereby is representing and holding out Bank of America to be its agent for Harms' loan. Under these circumstances, there would be no logical basis for the court to second guess BONYM's and Bank of America's dual representations that Bank of America was serving as BONYM's master servicing agent for Harms' loan.

To the extent that Harms challenges Williams' ability to qualify as witness for Bank of America's business records, such challenge also fails. The business records exception is set forth in Fed. R. Evid. 803(6) and provides that a document is excepted from the rule against hearsay if it is a "record of an act, event, condition, opinion, or diagnosis" and if:

(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Harms' argument focuses on subdivision (D) of Fed. R. Evid. 803(6), which required Williams, as the declarant, to demonstrate that she is the custodian of the subject business records or otherwise is qualified as a witness to demonstrate the exceptions' prerequisites, as set forth in subdivisions (A) through (C) of Fed. R. Evid. 803(6).

The Ninth Circuit liberally construes what it means to be a qualified witness for purposes of the business records exception. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991). The testifying witness need not be the custodian of the record, but only needs to demonstrate that she is familiar with, and understands, the record keeping system. *Id.* Thus, in *Ray*, a welfare fraud investigator was a qualified witness that could lay the foundation necessary to admit documents in a criminal defendant's welfare file under the business records exception after stating that she was "familiar with the filing and reporting requirements for public assistance benefits and the forms used in connection with those requirements." *Id.*

Moreover, because this evidence is foundational in nature, the personal knowledge standard does not need to be followed when the declarant is establishing his or her competency to testify regarding the business records. *See* Fed. R. Ev. 104(a); 4 Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 8:78(5)(4th ed.). In other words, the declarant's statements regarding her familiarity with and understanding of the records in question are not subject to the ordinary personal knowledge requirement. *See id.* at n. 37. One leading treatise explains how this works in practice:

> Only a knowledgeable witness can satisfy the exception, but it
> seems reasonable to make do with circumstantial knowledge

that would not suffice for witnesses giving evidence on the merits. The foundation witness needs to know enough to say that the record was prepared in the ordinary course of business in the manner contemplated by the exception (being regularly kept, all participants acting in ordinary course, source with knowledge, timeliness). Thus he needs firsthand knowledge about the normal processes of the business, but he need not be someone who observed any step in creating the record, and he need not even know exactly who participated in the various steps. He may rely largely on a kind of circumstantial knowledge, and he even [may] rely partly on what amounts to hearsay—on what he has learned by talking to others about record-keeping processes.

*Id.*

As indicated above, the Ninth Circuit's decision in *Ray* is consistent with this practice. *See* 930 F.2d at 1370. Accordingly, Williams did not need to personally know when and by whom the records actually were prepared. *Id.* ("There is no requirement that the government establish when and by whom the documents were prepared."). So long as she was able to competently testify that these types of records generally are made at or near the time of the occurrences recorded – by persons with personal knowledge or from information transmitted by persons with personal knowledge – she has established herself as a qualified witness under the business records exception to the hearsay rule. *Id.* Williams' declaration established that she was qualified to lay the foundation for Bank of America's business records.

Even if we were to assume that Williams was relying on what originally were BONYM's records – Harms' argument still fails. In the Ninth Circuit, Fed. R. Evid. 803(6) applies to records received by a business from third parties, so long as the following conditions are met: (1) the "records are kept in the regular course of that business;" (2) the business relies upon those records; and, (3) the "business has a substantial interest in the accuracy of those records." *See MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) (citing *United States v. Childs*, 5 F.3d 1328, 1333–34, 1334 n. 3 (9th Cir. 1993)).

Here, Williams' declaration testimony established each of these three conditions. She spoke about how Bank of America routinely kept in its collateral file records regarding the location of the original promissory note. She also stated that it was Bank of America's regular practice to rely upon such records. Finally, under the circumstances, Bank of America's interest in the accuracy of these records is obvious. At any time, the principal on whose behalf Bank of America is acting as servicing agent may ask Bank of America to transfer possession of the original note to someone else. Bank of America hardly can do so without keeping track of the location of the original promissory note. That is why Williams stated: "One of the purposes of maintaining [the] collateral file is to track the location of

the Original Promissory Note."[8]

In short, the bankruptcy court did not abuse its discretion when it concluded that Williams was qualified to lay the foundation for Bank of America's business records, or that she established the applicability of the business records exception to the hearsay rule. The record before us demonstrates that the bankruptcy court properly admitted Williams' testimony, which was properly based on her review of Bank of America's business records. Those records established that BONYM, through its agents, held the original promissory note, which in turn established BONYM's standing to seek relief from the stay.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's relief from stay order.

---

[8] At bottom, Bank of America's reliance on its records to keep track of the original note's location demonstrates their inherent trustworthiness. Trustworthiness is the cornerstone underlying the business records exception. *See Childs*, 5 F.3d at 1333-34 & n.3. In situations like this, where the businesses' interest in the accuracy of the records is apparent, the businesses' reliance typically demonstrates the trustworthiness of such records. *See Chu v. Lara (In re Chu)*, BAP No. NV-07-1243-McMoPa, 2008 WL 8444805, at *7 ( 9th Cir. BAP Mar. 18, 2008) (citing *Childs*, 5 F.3d at 1334).