FILED

FEB 10 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:

BEVERLYANN LEE,

                Debtor.

_____

BEVERLYANN LEE,

              Appellant,

v.

NATIONSTAR MORTGAGE, LLC, dba
Champion Mortgage Company; WAYNE
GODARE, Chapter 13 Trustee,

              Appellees.

BAP No. OR-19-1140-FBS

Bk. No. 3:16-bk-32793-pcm13

Adv. Pro. 3:16-ap-03156-pcm

**MEMORANDUM**<sup>*</sup>

Submitted Without Argument on January 30, 2020

Filed – February 10, 2020

Appeal from the United States Bankruptcy Court
for the District of Oregon

---

    <sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Peter C. McKittrick, Bankruptcy Judge, Presiding

―――――

Appearances:     Appellant Beverlyann Lee, pro se, on brief; John Thomas
                 of McCarthy & Holthus, LLP on brief for appellee
                 Nationstar Mortgage, LLC dba Champion Mortgage
                 Company.

―――――

Before: FARIS, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Beverlyann Lee is the borrower under a reverse mortgage issued by lender Nationstar Mortgage, LLC dba Champion Mortgage Company ("Nationstar"). The loan documents require Ms. Lee to pay the property taxes on her residence in a "timely manner." Ms. Lee failed to pay in full the taxes for six years, so Nationstar paid the taxes on her behalf and charged the payments to her loan account. When Ms. Lee filed for bankruptcy protection, she complained that Nationstar had (among other things) paid the taxes too soon. The bankruptcy court disagreed with her.

Ms. Lee appeals, arguing that the bankruptcy court misconstrued the loan documents and state law and committed evidentiary errors. We reject

―――――

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

all of Ms. Lee's arguments and AFFIRM.

<h2 style="text-align:center">FACTUAL BACKGROUND[2]</h2>

## A.    Prepetition events

### 1.    The loan documents

In early 2009, Ms. Lee entered into a reverse mortgage transaction[3] with Bank of America concerning her residence in Portland, Oregon. Nationstar is the current owner and servicer of the mortgage.

The reverse mortgage transaction involved an adjustable rate deed of trust (the "DOT"), an adjustable rate note (the "Note"), and a loan agreement (the "Loan Agreement").

The Loan Agreement set a principal limit[4] of $392,730, which

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] Ms. Lee's reverse mortgage is apparently federally insured and is called a Home Equity Conversion Mortgage ("HECM"). "Reverse mortgage lenders advance funds to borrowers as a lump sum, in monthly payments, through a line of credit, or a combination of these options." Tara Twomey, *Crossing Paths: The Intersection of Reverse Mortgages and Bankruptcy*, 89 Am. Bankr. L.J. 363, 370 (2015) (footnotes omitted). "The entire balance for a HECM loan is due at maturity, which occurs when the borrower dies, sells the home, or fails to occupy the home for at least a year." *Id.* at 373 (footnote omitted). "[B]orrowers are generally required to pay taxes, insurance premiums, ground rents, and assessments, and keep the property in good repair." *Id.* at 370.

[4] "The principal limit is the maximum gross amount of money that the borrower can receive under the reverse mortgage." Twomey, *supra*, at 372. It is calculated by determining the "maximum claim amount," which is the maximum amount that the U.S. Department of Housing and Urban Development ("HUD") will insure, then

(continued...)

included a $93,153.44 line of credit. Ms. Lee intermittently obtained advances varying between a few hundred dollars and $25,000.

The Loan Agreement further provided that Ms. Lee could elect either to pay her taxes and other property charges directly or to have Nationstar make those payments for her and charge them to her line of credit. *See* Loan Agreement at § 2.10.1. If she opted to pay the property charges herself, but failed to do so "in a timely manner," Nationstar had the right to pay them and charge them to her account:

> If Borrower fails to pay the property charges **in a timely manner**, and has not elected to have Lender make the payments, **Lender shall pay the property charges as a Loan Advance** as required under Section 2.16. If a pattern of missed payments occurs, Lender may establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have Lender pay the property charges.

*Id.* at § 2.10.5 (emphasis added).[5] Section 2.16 provided that "Loan Advances made pursuant to Section[ ] . . . 2.10.5 . . . shall be made from a line of credit under Section 2.6 or 2.7 to the extent possible."

Similarly, the DOT provided (at paragraphs 2 and 5 of the uniform covenants) that Ms. Lee was to pay governmental real property taxes "in a

---

[4](...continued)
multiplying that by the applicable principal limiting factor set by HUD. *Id.* at 371.

[5] Loan Advances were defined as "all funds advanced from or charged to Borrower's account under conditions set forth in this Loan Agreement, whether or not actually paid to borrower." Loan Agreement at § 1.2.

timely manner" and that Nationstar may pay the taxes and charge them to her indebtedness if she failed to do so.

### 2. Ms. Lee's failure to pay real property taxes

Ms. Lee elected to pay the property charges herself but failed to pay some or all of the real property taxes between 2010 and 2015. Nationstar paid the state of Oregon $39,669.77 on Ms. Lee's behalf and charged the payments to her principal balance as loan advances. Ms. Lee repaid Nationstar a total of $8,581.55.[6]

Ms. Lee's failure to pay timely the real property taxes placed her in default under the loan documents. Nationstar scheduled a foreclosure sale.

## B. Bankruptcy events

### 1. Ms. Lee's bankruptcy filings

Shortly before the foreclosure sale, Ms. Lee filed a chapter 13 petition and scheduled Nationstar's $535,000 undisputed claim.

Ms. Lee filed a proposed chapter 13 plan, which provided that she would cure the prepetition arrearage due to Nationstar at 0% interest over sixty months. The bankruptcy court confirmed the plan.

### 2. Nationstar's proof of claim

Nationstar timely filed a proof of claim (the "Claim"). It attached

---

[6] Ms. Lee apparently entered into multiple repayment agreements with Nationstar that allowed her to repay the loan advances over time, although the record in this respect is unclear.

documents concerning her account, including the loan payoff history, the DOT, the Note, and the assignment of the DOT from Bank of America to Nationstar, but it did not attach the Loan Agreement.

### 3. Ms. Lee's adversary complaint and objection

Ms. Lee filed an adversary complaint against Nationstar for breach of contract, unfair debt collection practices, false representations, and financial abuse. She alleged that Nationstar breached the DOT when it paid the property taxes and charged her principal balance without her approval.

Ms. Lee also objected to Nationstar's Claim. She contended that the Claim should be disallowed because Nationstar failed to provide the proper documentation, she was not liable for any arrears, and Nationstar engaged in improper accounting practices.

The bankruptcy court consolidated the objection and the adversary proceeding.

### 4. The cross-motions for summary judgment

Ms. Lee filed a motion for summary judgment ("Motion"). She pointed out that, under the Loan Agreement, Nationstar could pay the property taxes only if she did not do so in a "timely manner." She stated that, under state law, taxes are due by May 15 following the tax assessment, and the state can only declare a tax default three years after a delinquency. She took the position that payments were timely if made before the three-year default date.

6

She further argued that Nationstar failed to provide a copy of the Loan Agreement and was time-barred from belatedly doing so. Thus, it could not establish her obligations under the agreement.

Ms. Lee also contended that Nationstar's accounting was incorrect and that it misapplied her repayments.

Nationstar opposed the Motion and filed its own cross-motion for summary judgment ("Cross-Motion"). In essence, Nationstar argued that the "timely manner" requirement means that borrowers must pay real property taxes before they are "delinquent" under applicable law, *i.e.*, by May 15. Nationstar represented that it paid Ms. Lee's real property taxes from 2010 to 2014 when they were delinquent. As a result of the delinquency, the state assessed interest totaling $3,205.42. Nationstar said that it made an early payment in 2015 to avoid incurring interest and obtain a three-percent discount. It also argued that its accounting was correct and that it "credited dollar-for-dollar" Ms. Lee's repayments.

The bankruptcy court held a hearing on the motions.[7] It issued a letter decision denying the Motion and granting in part the Cross-Motion.

The court first ruled that it could consider the Loan Agreement. It did not find Nationstar's failure to attach the document to the Claim fatal,

---

[7] Ms. Lee failed to provide the Panel with any hearing transcript. Accordingly, we assume that nothing said at the hearing would aid Ms. Lee's case. *Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 680-81 (9th Cir. BAP 1994).

because Nationstar could easily amend the Claim to include the Loan Agreement. The court further accepted Nationstar's representation that the failure to attach a copy of the Loan Agreement to the Claim was inadvertent and held that Ms. Lee would not be prejudiced by such an amendment: she admitted that she signed a loan agreement and never directly stated that the Loan Agreement submitted by Nationstar is not the one that she signed, that she was unaware of the terms of the Loan Agreement, or that she did not have a copy of the document.

The court also rejected Ms. Lee's evidentiary objections to the Loan Agreement. It noted that Ms. Lee had never argued that the mortgage transaction was invalid or unenforceable. Indeed, she relied on the Loan Agreement when arguing that Nationstar violated its terms.

Regarding the substantive objections, the court held that Ms. Lee had failed to make the tax payments "in a timely manner," so Nationstar was within its rights to pay the taxes on her behalf. It agreed with Nationstar that, when the taxes became "delinquent" under Oregon law, Ms. Lee had not made payment "in a timely manner."[8] It rejected her position that payment was only warranted once the state declared a default or imposed a penalty after three years of delinquency.

---

[8] The court further rejected Ms. Lee's argument that Nationstar should not have paid the 2015 taxes early, because she had "established a pattern and practice of failing to pay the taxes when due," and early payment would secure a discount. It found that Nationstar acted reasonably under the DOT and Loan Agreement.

The bankruptcy court also rejected Ms. Lee's argument that the tax advances were improper because they exceeded the principal limit under the Loan Agreement. The court noted that the Loan Agreement dictated limits when the borrower requests a loan advance, but such a limitation was not applicable to protective advances by the lender.

The bankruptcy court next denied summary judgment on the various accounting issues. It held that questions of fact precluded summary judgment concerning the application of Ms. Lee's repayments: the parties did not provide copies of the repayment agreements or explain the effect of the repayment agreements. It also held that the parties did not sufficiently address the propriety of certain charges challenged by Ms. Lee.

The court granted Nationstar summary judgment "to the extent that the claims asserted in the Complaint are dependent on the Debtor's contention that Nationstar improperly paid the 2010-2015 taxes" and issued an order denying the Motion and granting in part the Cross-Motion. Later, the court denied Ms. Lee's motion for reconsideration.

Nationstar filed its amended proof of claim, which included a copy of the Loan Agreement.

Still later, for reasons that are not the subject of this appeal, the bankruptcy court dismissed all remaining claims in the adversary proceeding.

Ms. Lee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158. The dismissal of the remaining claim in the adversary proceeding rendered the prior interlocutory summary judgment orders appealable. *See Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981) ("[A]n appeal from the final judgment draws in question all earlier non-final orders and all rulings which produced the judgment.").

## ISSUES

(1) Whether the bankruptcy court erred in considering the Loan Agreement.

(2) Whether the bankruptcy court erred in interpreting the loan documents and statutes regarding the payment of real property taxes.

(3) Whether the bankruptcy court erred in denying summary judgment as to accounting-related issues.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's rulings on a summary judgment motion. *Ilko v. Cal. St. Bd. of Equalization (In re Ilko)*, 651 F.3d 1049, 1052 (9th Cir. 2011). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

A bankruptcy court's evidentiary rulings are reviewed for an abuse

10

of discretion and should not be reversed unless the error was prejudicial. *See Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008). Similarly, we review for abuse of discretion the court's ruling on a motion for reconsideration. *Determan v. Sandoval (In re Sandoval)*, 186 B.R. 490, 493 (9th Cir. BAP 1995).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. We apply the same summary judgment standard as the bankruptcy court.

When reviewing a bankruptcy court's summary judgment ruling, we apply the same summary judgment standards as all other federal courts. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). Summary judgment should be granted when there are no genuine issues of material fact and when the movant is entitled to prevail as a matter of law. Civil Rule 56(a) (made applicable in adversary proceedings by Rule 7056). In resolving a summary judgment

11

motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.), *opinion amended on denial of reh'g*, 125 F.3d 1281 (9th Cir. 1997). A material fact is one that, "under the governing substantive law . . . could affect the outcome of the case." *Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 760 (9th Cir. 2008). A factual dispute is considered genuine if there is sufficient evidence to permit a reasonable trier of fact to make a finding in favor of either party. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

**B.     The bankruptcy court properly considered the Loan Agreement.**

Ms. Lee argues that the bankruptcy court should not have considered the Loan Agreement, because: (1) the Loan Agreement was hearsay; (2) the Loan Agreement was not filed with the Claim; and (3) the Loan Agreement was not properly signed by a Bank of America representative. We discern no abuse of discretion.

First, Ms. Lee argues that the Loan Agreement was inadmissible hearsay because Nationstar did not originate the loan and therefore could not lay the required evidentiary foundation. But, at the summary judgment stage, the issue is not whether the proffered evidence would be admissible at trial. Rather, the question is whether that evidence "cannot be presented

in a form that would be admissible in evidence." Civil Rule 56(c)(2).[9] Thus, the court "may consider hearsay evidence submitted in an inadmissible form at the summary judgment stage." *Sec. & Exch. Comm'n v. Strategic Glob. Invs., Inc.*, 262 F. Supp. 3d 1007, 1019 (S.D. Cal. 2017) (citing *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016)). Given that Ms. Lee did not deny the authenticity of the Loan Agreement, and in fact relies on it to make her case, the bankruptcy court did not err in considering it.[10]

Second, Ms. Lee argues that the bankruptcy court should not have considered the Loan Agreement because it was not attached to the Claim. But there is no authority for the proposition that a failure to attach a

---

[9] We disagree with the bankruptcy court's holding that the Loan Agreement was "properly authenticated and is admissible." The only foundation was a declaration by Nationstar's attorney stating that the document was the Loan Agreement, which "was provided to me by Defendant." But the bankruptcy court went on to hold, correctly, that admissibility is not the criterion at the summary judgment stage.

[10] Nationstar probably could lay a proper foundation for the Loan Agreement at trial. We have held that the business records exception to the hearsay rule, Rule 803(6) of the Federal Rules of Evidence ("FRE"), "applies to records received by a business from third parties, so long as the following conditions are met: (1) the 'records are kept in the regular course of that business;' (2) the business relies upon those records; and, (3) the 'business has a substantial interest in the accuracy of those records.'" *See Harms v. Bank of N.Y. Mellon (In re Harms)*, 603 B.R. 19, 30 (9th Cir. BAP 2019) (quoting *MRT Constr. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998)). The residual hearsay exception, FRE 807, might also apply to this case. *See United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) ("FRE 807 involves discretion. It exists to provide judges a 'fair degree of latitude' and 'flexibility' to admit statements that would otherwise be hearsay." (citing *United States v. Valdez–Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994))).

required document to a proof of claim renders that document inadmissible.[11] Moreover, the bankruptcy court correctly held that the Ninth Circuit's liberal amendment policy allows Nationstar to amend the Claim to include the Loan Agreement. *See Jackson v. United States (In re Jackson)*, 541 B.R. 887, 891 (9th Cir. BAP 2015) ("It has long been established in the Ninth Circuit that an amendment to a timely proof of claim 'relates back' to a timely filed claim when the original claim provided 'fair notice of the conduct, transaction, or occurrence that forms the basis of the claim asserted in the amendment.'" (citation omitted)). The amendment did not prejudice Ms. Lee. She never denied that the Loan Agreement proffered by Nationstar was authentic and binding. In fact, she relied on the terms of the Loan Agreement to support her argument that the tax advances were improper. Ms. Lee cannot have it both ways; she cannot rely on the Loan Agreement while precluding Nationstar from doing the same.

Third, Ms. Lee contends that she cannot identify the name of the Bank of America employee who signed the Loan Agreement and that it is not notarized. This argument is meritless. An illegible signature is just as

---

[11] Such a failure is not even fatal to the proof of claim itself. The failure to attach documents may deprive the claim of presumptive validity but does not permit disallowance of the claim. *See Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 433 (9th Cir. BAP 2005) ("It is generally held that failure to attach writings to a proof of claim does not require a bankruptcy court to disallow a claim on that basis alone. Rather, the claim is not entitled to be considered as prima facie evidence of the claim's validity." (citation omitted)).

valid as a legible one. Further, she does not cite any requirement that the Loan Agreement needed to be notarized.

Therefore, the bankruptcy court did not err in considering the Loan Agreement in connection with its ruling on the Motion and Cross-Motion.

**C.    The bankruptcy court did not err in construing Ms. Lee's obligation to pay real property taxes "in a timely manner" and Nationstar's authority to pay the taxes on her behalf.**

Ms. Lee argues that Nationstar should not have paid the taxes on her behalf, so she does not have to repay the money that Nationstar advanced to pay the taxes. She is wrong.

As we have noted, the Loan Agreement provides that, if Ms. Lee "fails to pay the property charges **in a timely manner**, . . . [Nationstar] shall pay the property charges as a Loan Advance as required under Section 2.16." Loan Agreement at § 2.10.5 (emphasis added). Similarly, uniform covenant 5 of the DOT provides that, if Ms. Lee "fails to make . . . the property charges . . . , then [Nationstar] may do and pay whatever is necessary to protect the value of the Property and [Nationstar's] rights in the Property, including payment of taxes . . . ."

Oregon state statutes specify when real property taxes are to be paid. Oregon Revised Statutes ("ORS") § 311.250 directs the tax collector to send taxpayers by October 25 a written statement of real property taxes "payable on the following November 15." If the taxpayer pays the taxes in full by November 15, the taxpayer is entitled to a discount of three percent. ORS

§ 311.505(3)(b). If the taxpayer does not make this full payment, one-third of the taxes "shall be paid" on or before November 15, February 15, and May 15. ORS § 311.505. The title of the statutory section refers to "due dates." Interest accrues on taxes "not paid when due" at 1.33% per month, or 16% per annum. ORS § 311.505(2). The statute provides that "[t]axes on real property not paid on or before May 15 are delinquent." ORS § 311.510. The state may institute foreclosure proceedings three years after the taxes become delinquent: "real property within this state is subject to foreclosure for delinquent taxes whenever three years have elapsed from the earliest date of delinquency of taxes levied and charged thereon." ORS § 312.010(1).

Finally, ORS § 86.050 provides that a mortgagee may pay taxes on behalf of a mortgagor who fails to pay taxes "when due":

> Whenever a mortgagor fails to pay when due any taxes . . . , the mortgagee may pay the same, and such payments shall be added to the mortgage debt and secured by the mortgage held by the mortgagee, and shall bear interest at the same rate as specified in the mortgage.

ORS § 86.050.

In essence, Ms. Lee contends that she could make her tax payments "in a timely manner" under the Loan Agreement at any time before the taxing authority was entitled to foreclose its lien. In other words, she argues that her payment would be "timely" even if made up to three years after the taxes were "delinquent" under state law. The bankruptcy court

16

did not err in rejecting this argument.

Under Oregon law, "[w]hen we interpret any written instrument, our objective is to ascertain the meaning that most likely was intended by the parties that entered into it." *McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12 (2007) (citing ORS § 42.240). The court undertakes a three-step process to interpret a contract:

> First, the court must determine whether, as a matter of law, the relevant provision is ambiguous. . . .
>
> The analysis ends if the meaning of the provision is clear from the text and context of the contract. The court then applies the contractual term to the facts. If the provision is ambiguous, however, the court proceeds to the second step. At the second step, the trier of fact examines extrinsic evidence of the contracting parties' intent and construes the contractual provision consistent with that intent, if such a resolution can be determined. . . . If, after examining extrinsic evidence, the contract is still ambiguous, the court applies appropriate maxims of construction at the third step.

*Heine v. Bank of Oswego*, 144 F. Supp. 3d 1198, 1209 (D. Or. 2015) (citations omitted).

We first consider "whether the term at issue has a plain meaning. The meaning of a term is 'plain' – that is, unambiguous – if the term is susceptible to only one plausible interpretation." *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 308 (1999) (citations omitted); *see Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 313 (2006) ("A contract provision is

ambiguous if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation[.]" (citation omitted)).

The Loan Agreement and DOT are not ambiguous. They require Ms. Lee to make real property payments "in a timely manner." Under ORS § 311.510, taxes not paid by May 15 are "delinquent." No reasonable or plausible interpretation would conclude that taxes can be paid in a "timely manner" after they have become "delinquent."[12]

Even looking beyond the contractual language, the purpose of these provisions of the loan documents supports the bankruptcy court's conclusion. Real estate lenders insist that their borrowers pay real property taxes because, in most if not all states (including Oregon), those taxes are secured by paramount liens with priority over the lien of the mortgage or deed of trust.[13] The existence of such a lien reduces the value of the lender's collateral, particularly where the tax debt accrues interest at the alarming rate of sixteen percent per annum. *See* ORS § 311.505(2). No reasonable interpretation of the Loan Agreement or the DOT would expose the lender

---

[12] Ms. Lee also argues that the phrase "in a timely manner" in the Loan Agreement must have a meaning different from the phrase "on time" in the DOT. She apparently thinks that, for purposes of contract interpretation, different phrases must always be given different meanings. This is not correct, at least where the two different phrases unambiguously mean the same thing (as is the case here).

[13] "The liens for ad valorem taxes, . . . created under this section are superior to, have priority over and shall be fully satisfied before all other liens, judgments, mortgages, security interests or encumbrances on the property without regard to date of creation, filing or recording." ORS § 311.405(9)(a).

18

to this risk.

Ms. Lee complains that Nationstar had no authority to pay the real property taxes and charge her principal line of credit. But the loan documents explicitly allow Nationstar to pay the taxes and charge the amounts to her principal balance. The Loan Agreement states that "Loan Advances . . . shall be made from a line of credit under Section 2.6 or 2.7 to the extent possible." Loan Agreement at § 2.16. Oregon statutes also authorize Nationstar to make tax payments, where "such payments shall be added to the mortgage debt and secured by the mortgage held by the mortgagee, and shall bear interest at the same rate as specified in the mortgage." ORS § 86.050. Thus, because Ms. Lee failed to make some or all of her real property tax payments "in a timely manner," both the loan documents and state law allowed Nationstar to charge the loan advances to her line of credit.[14]

Ms. Lee argues that Nationstar was precluded from paying the taxes because the tax advances plus her principal balance exceeded the principal limit set out in the Loan Agreement. She cites the Loan Agreement's section 2.6.1, but the bankruptcy court correctly pointed out that this section is

---

[14] Although it is unclear if Ms. Lee is pursuing her argument that Nationstar made the 2015 tax payment early, we agree with the bankruptcy court that Nationstar's actions were reasonable under the Loan Agreement. Ms. Lee had demonstrated a pattern of failing to pay in full the real property taxes for the prior five years. Nationstar paid the 2015 taxes before November 15 in order to secure a three-percent discount and avoid accruing interest; in doing so, it saved Ms. Lee $245.

19

only applicable to borrower-requested loan advances. The Loan Agreement does not constrain Nationstar from charging the tax advances to the principal balance, even if it would exceed the principal limit. To hold otherwise would lead to an absurd result: if Ms. Lee were correct, the lender could not protect its lien without paying the borrower's debt at the lender's sole expense. The bankruptcy court was correct in declining to read such a requirement into the Loan Agreement.

Ms. Lee contends that, while the Loan Agreement permitted loan advances, it did not permit "corporate advances." This argument is meritless. The loan documents do not distinguish between a "corporate advance" and a "loan advance." Rather, the Loan Agreement specifically provides that a loan advance includes "all funds advanced from or charged to Borrower's account under conditions set forth in this Loan Agreement," *see* Loan Agreement at § 1.2, and that "Lender shall pay the property charges as a Loan Advance . . . [,]" *see id.* at § 2.10.5.

Finally, Ms. Lee intimates that the tax advances were gifts that she does not have to repay. She argues that the loan was non-recourse; that Nationstar knew that the payments were gifts; and that Nationstar has other sources (such as HUD and private mortgage insurance) from which to seek repayment. These arguments are wholly inconsistent with the loan documents, which unambiguously require Ms. Lee to repay loan advances or face foreclosure. In other words, she is not entitled to refuse to repay

Nationstar *and* retain her property.

Therefore, the court correctly construed the statutes and loan documents when it held that Nationstar had authority to pay the real property taxes and charge the loan advances to Ms. Lee's principal account.

**D.   The bankruptcy court did not err in declining to rule on the accounting issues.**

Finally, Ms. Lee repeats her arguments related to alleged accounting errors and misapplication of her payments. But the bankruptcy court ruled that neither party had offered sufficient evidence or argument to permit it to grant summary judgment. We agree with the bankruptcy court that the record was insufficient to grant summary judgment on these issues.

## CONCLUSION

The bankruptcy court did not err in denying Ms. Lee's Motion, granting in part Nationstar's Cross-Motion, and denying the motion for reconsideration. We AFFIRM.